STARINKI, APPELLANT, *v.*
PACE, APPELLEE.

(No. 12944—Decided
August 5, 1987.)

*Warren W. Gibson,* for appellant.
*Irving A. Portman,* for appellee.

CACIOPPO, J. Plaintiff-appellant, Victor A. Starinki, operated Barberton Motor Sales, Inc. ("Barberton Motors"), a family-owned business. In 1982, Starinki decided to sell the business. He was introduced to defendant-appellee, Michael A. Pace, through a mutual friend.

At the time, June 1982, Pace was

working as a sales manager at Cal Wible Pontiac, earning approximately $42,000 per year. Pace and Starinki met several times in negotiating a deal and two drafts of a contract were drawn. Pace quit his job before signing the final agreement. Starinki had given Pace financial statements to review before the final agreement was signed. Pace testified that he had shown these statements to a CPA, but the record does not reflect any opinion of the CPA at that time. The contract was signed August 13, 1982, in the office of Pace's attorney. The contract provided that Starinki, as owner of all the stock in the corporation,[1] would sell fifty percent of the shares to Pace for $75,000, to be paid at the rate of $15,000 a year for five years. Payments were to be made quarterly — $3,750 per quarter, with the first payment due January 1, 1983. The contract further stated that the stock payments "*may* be paid from Buyer's personal income *and/or* profits of the corporation in the account of the Buyer." (Emphasis added.) Additionally, the agreement made Pace the general manager of the company at a salary of $2,500 per month.

Barberton Motors had a floor plan financing arrangement with First National Bank. In April 1982, the bank sent a letter to Starinki stating that Barberton Motors had to remain under its $400,000 credit limit from that point on or a hold would be imposed on the floor plan. The letter also required the bank's approval for every car ordered after that date. Starinki testified that during negotiations, he discussed the floor plan with Pace and gave him the letter. Pace claims he was unaware of this letter until October or November 1982. In October, the bank imposed a floor plan hold — refusing to pay for any cars ordered from the manufacturer until the amount owed by Barberton was reduced to within the limit.

Pace began working as general manager in September 1982. Pace testified that upon receiving his first paycheck, he had a conversation with Starinki concerning the payment of federal employee withholding taxes. Pace claims that Starinki told him "not to worry" about paying the tax and that Starinki could save over $600 per month for the company. If there were any problems, Starinki said that the company would pay the back payments to the IRS. It does not appear that any payments were made to the IRS. As a result, Starinki and Pace have both become liable for the tax and one-hundred-percent penalty in the amount of $70,000.

The financial statements show that Barberton Motors made and lost money throughout 1982, and that profits were made in September, October, and November. In January 1983, Pace claims that he told Starinki that he wanted out of the deal because he could not support his family on his $2,500 a month salary alone. Pace claims that a letter signed by Starinki is evidence of their agreement that Pace would seek new employment. The letter, addressed "To Whom It May Concern," states that it is "authorization" for Pace to negotiate with any car manufacturer relative to the purchase of a franchise. It is signed by Starinki and notarized.

Pace never paid anything toward

---

[1] The transcript and exhibits raise a question as to whether Starinki actually owned all of the stock at the time of the contract. There is evidence of a dispute over Starinki's purchase of the stock from his mother for nonpayment. The transcript reveals that Pace was not aware of this issue until Starinki's deposition.

the purchase of the stock. The financial statements show excessive losses for the first four months of 1983. Pace continued working as the general manager while looking for new employment. In June 1983, Barberton Motors was out of trust on the floor plan and the bank closed the business.

In May 1985, Starinki brought an action against Pace for breach of contract, seeking approximately $139,000 for the price of the stock, plus interest. Pace counterclaimed for fraudulent representation of the financial condition of the business. The counterclaim alleges that Starinki induced Pace to quit his job and enter into the contract without telling him about the status of the floor plan arrangement. The counterclaim also prays for relief from the IRS obligation. Pace asks that should he be required to pay it, Starinki should be held liable for contribution.

After trial, the jury found against Starinki as to the breach of contract, and awarded Pace $10,000 compensatory and $25,000 punitive damages on the counterclaim. Starinki now appeals.

The appellant has not assigned errors in his brief, but rather raises issues followed by arguments and/or discussions. For purposes of this opinion, the issues presented will be construed as assignments of error.

### Assignment of Error I

"Can a jury award damages, compensatory and punitive, for misrepresentations when there was not a scintilla of evidence as to the value of the business as represented and the value of the business as sold?"

"The measure of damages for fraud inducing the purchase or exchange of property is the difference between the property as it was represented to be and its actual value at the time of the purchase or exchange. This rule, followed by what is probably a majority of American jurisdictions, is known as the 'benefit of the bargain' rule. * * *." 51 Ohio Jurisprudence 3d (1984) 75, Fraud and Deceit, Section 215.

The above rule was adopted in *Molnar* v. *Beriswell* (1930), 122 Ohio St. 348, 171 N.E. 593, and was contained in the jury instructions in this case.

In essence, this first issue involves the weight of the evidence. We cannot agree that there was not "a scintilla" of evidence as to the value of Barberton Motors. The jury had before it several financial statements and balance sheets, as well as a year-end compilation of financial statements for 1982.[2]

Further, where pecuniary damage does exist, evidence of the exact amount of the difference in value is not necessarily required. *Stenger* v. *Meyers* (App. 1935), 19 Ohio Law Abs. 304, 308. If the plaintiff proves facts from which the only proper inference is that he was substantially damaged, he has the right to have the jury fix his damage. *Id.* See, also, *Middleton* v. *Ohio State Home Services, Inc.* (Oct. 8, 1986), Wayne App. No. 2153, unreported.

In the instant case, there was some competent, credible evidence of value before the jury. See *C.E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578. The weight to be given that evidence was primarily for the jury's determination, as the trier of fact. *State* v. *DeHass* (1967), 10 Ohio St. 2d 230, 39 O.O. 2d 366, 277 N.E. 2d 212, paragraph one of the syllabus. Accordingly, Assignment of Error I is overruled.

---

[2] We note that the instructions on the benefit of the bargain rule were proposed by Starinki's counsel, who now complains that the jury obviously lost its way.

### Assignment of Error II

"Can a jury award damages in any amount where there was ample opportunity to obtain financial records to verify the accuracy of the alleged misrepresentations prior to contracting for purchase?"

Throughout the trial and his appellate brief, Starinki places a burden of inquiry on Pace as to the financial condition of the business. Starinki takes the position that Pace was given everything he asked for, and had Pace inquired into the status of the floor plan, he would have received that information as well. Since Pace never asked, Starinki essentially claims he was under no duty to disclose.

Resolution of this assignment of error centers on deciding where a duty existed. In *Miles* v. *McSwegin* (1979), 58 Ohio St. 2d 97, 12 O.O. 3d 108, 388 N.E. 2d 1367, the Ohio Supreme Court stated at 99, 12 O.O. 3d at 110, 388 N.E. 2d at 1369:

"One of the interests protected by the law of deceit is 'the interest in formulating business judgments without being misled by others * * *' into making unwise decisions which result in financial loss. Fleming & Gray, Misrepresentation—Part I, 37 Maryland L. Rev. 286-287 (1977). It is well established that an action for fraud and deceit is maintainable not only as a result of affirmative misrepresentations, but also for negative ones, such as the failure of a party to a transaction to fully disclose facts of a material nature where there exists a duty to speak. Prosser on Torts (4 Ed. 1971) 695-696, Representation and Nondisclosure, Section 106; 37 American Jurisprudence 2d 197-201, Fraud and Deceit, Sections 144 and 145; *Barder* v. *McClung* (1949), 93 Cal. App. 2d 692, 697, 209 P. 2d 808. * * *'"

The duty to speak does not necessarily depend on the existence of a fiduciary relationship. *Central States Stamping Co.* v. *Terminal Equipment Co.* (C.A. 6, 1984), 727 F. 2d 1405, 1409. "It may arise in any situation where one party imposes confidence in the other because of that person's position, and the other party knows of this confidence." *Id.*

As to Pace's duty to inquire, it is Starinki's position that as one in the business for over twenty years, Pace should have known what to look for. There is testimony that Pace was intimately familiar with all aspects of the business. In fact, Pace had previously owned a dealership that failed because it was out of trust on its floor plan financing.

Under *McSwegin, supra,* the question arises as to whether the condition of the financing was something Pace could have discovered upon reasonable inquiry. In *Foust* v. *Valleybrook Realty Co.* (1981), 4 Ohio App. 3d 164, 4 OBR 264, 446 N.E. 2d 1122, the court stated that although the purchasers of real estate had a duty to inquire and to inspect the premises in a reasonable fashion, they had a right to rely on the representations made, and were no longer under a duty after receiving answers to their questions. *Id.* at paragraph one of the syllabus. Pace testified that Starinki told him the dealership was in excellent financial condition. Although Starinki denies saying this, it was a question of fact which the jury decided in Pace's favor. Under the rationale of *Foust,* Pace's duty to inquire was thereby relieved. Appellant's second assignment of error was overruled.

### Assignments of Error

"III. Can a contract which is clear on its face, prepared by the defendant's attorney, be modified by parol evidence showing an intent different than that expressed by the written provisions of the contract?

"IV. Did the court err in overrul-

ing the plaintiff's motion in limini [*sic*] for restriction of evidence?''

Because these two issues relate to the admission of parol evidence, they will be discussed together.

Starinki contends that the contract's provision for payment is unambiguous, and that any evidence to contradict or vary the terms of payment is inadmissible. While this is a correct statement of law, we must consider the manner in which Starinki made his objection to the admission of evidence as to the intent of the parties.

Before the impaneling of the jury, Starinki made a motion *in limine*. He sought to exclude evidence on the intent of the parties — that while the contract may have stated that Pace was liable for payment out of his personal income and/or profits of the business, both parties understood that Pace had a limited income and could not possibly pay for the stock solely from his earnings. The trial court overruled Starinki's motion.

An order granting or denying a motion *in limine* is a tentative, preliminary or presumptive ruling about an evidentiary issue that is anticipated but has not yet been presented in its full context. *State* v. *White* (1982), 6 Ohio App. 3d 1, 4, 6 OBR 23, 28, 451 N.E. 2d 533, 538. Therefore, an appellate court need not review the propriety of such an order unless the claimed error is preserved by an objection, proffer, or ruling on the record when the issue is actually reached and the context is developed at the trial. The record in this case does not contain any objection by Starinki when the issue of intent was reached at the trial and questioning began as to that issue. Error in admitting parol evidence may be waived by not objecting to its introduction. 43 Ohio Jurisprudence 3d (1983) 381, Evidence and Witnesses, Section 532. Because Starinki failed to preserve the

claimed error, we will not review it. Assignments of Error III and IV are not well-taken.

Assignment of Error V

"Did the court err in overruling the plaintiff's motions for judgment notwithstanding the verdict of the jury and for a new trial?"

The standard of review of a ruling on a motion for judgment notwithstanding the verdict is the same as that applicable to a motion for a directed verdict. *Posin* v. *A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St. 2d 271, 275, 74 O.O. 2d 427, 430, 344 N.E. 2d 334, 338. Without weighing the evidence, this court must construe the evidence most strongly in favor of the nonmoving party and determine whether reasonable minds could come to but one conclusion on the evidence submitted, that conclusion being adverse to such party. *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282, 284-285, 21 O.O. 3d 177, 179, 423 N.E. 2d 467, 469. If so, Starinki's Civ. R. 50(B) motion should have been granted.

The record in this case, however, reveals that there was substantial competent evidence on each element to support Pace's claim of misrepresentation. Pace presented evidence to show (1) an actual concealment, (2) of a material fact, (3) with knowledge of the fact concealed, (4) with intent to mislead the other to rely upon such conduct, (5) followed by actual reliance by one having the right to rely, and (6) with injury resulting because of such reliance.

Specifically, Pace showed that Starinki was aware in April 1982, through the letter from First National, that restrictions had been placed on the floor plan. This was a material fact of which knowledge was necessary to make an informed decision on whether to enter into the contract. Starinki's in-

tent to mislead Pace into reliance can be inferred from the circumstances. Pace did so rely and had the right to rely based on Starinki's duty to disclose. Pace suffered damage as a result of his reliance, having quit his prior job.

Starinki cites Civ. R. 59(A)(6) and (7) as grounds for a new trial — that the judgment is not sustained by the weight of the evidence or that the judgment is contrary to law. As to the former basis, the trial court's decision involved discretion as to whether manifest injustice was done. We will reverse only upon a showing of abuse of that discretion. *Rohde* v. *Farmer* (1970), 23 Ohio St. 2d 82, 52 O.O. 2d 376, 262 N.E. 2d 685, paragraph one of the syllabus. Abuse of discretion " 'connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court * * *.' " *Pembaur* v. *Leis* (1982), 1 Ohio St. 3d 89, 91, 1 OBR 125, 127, 437 N.E. 2d 1199, 1201, quoting *Klever* v. *Reid Bros. Express, Inc.* (1951), 154 Ohio St. 491, 43 O.O. 429, 96 N.E. 2d 781. Under *Rohde, supra,* the burden is on the movant to show an abuse.

Starinki fails to make such a showing. The sum of his argument on the issue is that Civ. R. 59(A)(6) and (7) "should have been considered by the court" in ruling on his motions. This does not amount to a proper showing of abuse of discretion by the court below.

As to Starinki's claim that the judgment was contrary to law, he must show that the decision was erroneous as a matter of law. *Ruta* v. *Breckenridge-Remy Co.* (1982), 69 Ohio St. 2d 66, 23 O.O. 3d 115, 430 N.E. 2d 935. To support this claim, Starinki argues that:

"* * * there was absolutely no basis upon which a jury could make a finding of damages in favor of the Defendant and against the Plaintiff as there was no evidence upon which the damage claim could be made, and the jury obviously disregarded the instructions of the Court on the questions of the claims of the Defendant against the Plaintiff because the financial records were, in fact, available, the accuracy of the financial records were [*sic*] never denied, and there was no evidence of any kind upon which a claim of misrepresentation can be based where verifiable records were present."

We have already found that there was evidence upon which a damage claim could be made. As for Starinki's allegations about the jury's disregard of the instructions, we find his argument vague. He fails to note the specific instructions to which he takes exception. The remainder of his argument has been addressed in our discussion of the foregoing assignments of error. Assignment of Error V is not well-taken.

### Assignment of Error VI

"Did the court err in overruling the plaintiff's objection to a charge of punitive damages?"

Starinki's sole basis of argument on the issue of punitive damages is that there was no basis for the finding and awarding of compensatory damages. Because we have found that the compensatory damages were proper, the punitive damages award will stand. According, the sixth assignment of error is overuled.

For all of the foregoing reasons, the judgment is affirmed.

*Judgment affirmed.*

MAHONEY, P.J., and GEORGE, J., concur.