ARTHUR YOUNG & COMPANY, Appellee,

v.

KELLY, Appellant.

[Cite as *Arthur Young & Co. v. Kelly* (1993), 88 Ohio App.3d 343.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–1332.

Decided June 22, 1993.

344

Carlile, Patchen & Murphy and Alan F. Berliner, for appellee.

Bradley, Topper & Farris Co., L.P.A., and Philip R. Bradley, for appellant.

MARTIN, Judge.

This case is the fourth appeal arising from the 1987 termination of David Kelly ("Kelly") from his employment as an accountant with Arthur Young & Company ("Arthur Young"),[1] and Kelly's breach of a noncompetition clause which existed in his employment contract. Previously, this court has denied Arthur Young's motion to dismiss Kelly's appeal from an order upholding the noncompetition clause, *Arthur Young & Co. v. Kelly* (Sept. 29, 1987), Franklin App. No. 87AP–800, unreported, 1987 WL 17806; modified a preliminary injunction enforcing the clause, *Arthur Young & Co. v. Kelly* (Apr. 28, 1988), Franklin App. No. 87AP–800, unreported, 1988 WL 41069; and reversed an adjudication of contempt rendered against Kelly for violating the noncompetition clause, *Arthur Young & Co. v. Kelly* (1990), 68 Ohio App.3d 287, 588 N.E.2d 233. Six years after the

---

1. Following the initiation of the present action, Arthur Young merged with the accounting firm Ernst & Whinney to form Ernst & Young.

initiation of this acrimonious litigation, we are once again asked to consider the plight of the parties.

Arthur Young hired Kelly in 1984. At that time, the parties executed an employment contract which bound Kelly to the following noncompetition clause:

"You agree that you will not * * * for a period of two years after the termination of this agreement, directly or indirectly solicit or provide, without the consent of the firm, any professional services such as those provided by the firm for anyone who was a client of the firm anytime during the 12 months prior to your leaving the firm and for whom you provided any service as an employee of the firm during the prior five years. * * *"

Kelly was informed on May 21, 1987 that his employment was to be terminated, effective within ninety days. Kelly's last day at Arthur Young was July 15, 1987.

Prior to leaving Arthur Young, Kelly, by his own admission, initiated a concerted campaign to lure clients away from the firm. Following his termination, Kelly further intensified his solicitation efforts. These actions prompted Arthur Young to file a complaint in the Franklin County Court of Common Pleas on July 17, 1987. The final amended complaint alleged breach of contract, unfair competition and breach of fiduciary duty against Kelly. Monetary damages and injunctive relief were sought by Arthur Young. Kelly counterclaimed for unpaid vacation leave and business-related tuition expenses. Kelly also asserted numerous defenses, including estoppel, waiver, failure to state a claim and failure of consideration.

At the ensuing jury trial, Kelly raised additional defenses. He alleged that agents of Arthur Young had made misrepresentations to him concerning the scope and applicability of the noncompetition clause. Kelly also claimed that the entire employment contract was void for illegality due to a fraudulent tax scheme which he had been asked to perpetuate on behalf of an Arthur Young client.

Kelly testified in his own behalf about the alleged tax fraud. Other witnesses were also called to address the issue of contractual illegality. However, two proffers of evidence by Kelly were excluded by the trial court. One exclusion involved testimony by Timothy McCord, an Arthur Young employee. McCord was barred from responding to Kelly's cross-examination about efforts undertaken by the tax client to establish a dummy corporation for fraudulent purposes. In the other instance, the trial court prohibited the admission of documentation relating to the alleged fraud.

While on the witness stand, Kelly reiterated that he had solicited clients away from Arthur Young both prior to his termination and afterwards. In responding to Arthur Young's claims for damages, however, Kelly produced testimony and affidavits from several of the persons lured away from Arthur Young. This

evidence indicated that the clients had had no intention of continuing their business relationship with Arthur Young once Kelly was terminated.

At the close of arguments, Kelly moved to have the pleadings conform to the evidence on illegality. Kelly's motion was denied by the trial court.

The jury returned a verdict in favor of Arthur Young, awarding $9,400 on compensatory damages and punitive damages of $600. Kelly prevailed on his counterclaim, receiving $2,307.60 in compensatory damages. The court of common pleas also ruled that the preliminary injunction imposed upon Kelly earlier should be extended for a period of one year following the date of the merit decision. The injunction prohibited Kelly from conducting further work on behalf of the former clients of Arthur Young whom he had previously solicited for business.

Following the trial, Kelly moved unsuccessfully for a judgment notwithstanding the verdict, pursuant to Civ.R. 50(B). Kelly had contested the award of compensatory and punitive damages and the extension of injunctive relief.

Kelly ("appellant") has filed a timely notice of appeal from the judgment entered in favor of Arthur Young ("appellee"). Appellant asserts the following five assignments of error:

"I. The trial court erred by excluding evidence of the breach of the parties' contract by the appellee prior to the termination of defendant's employment.

"II. The trial judge erred in excluding evidence of illegal activity and failing to instruct the jury regarding the defense of the non-enforceability of illegal contracts.

"III. The trial judge erred in permitting an award of compensatory damages to the appellee.

"IV. The trial judge erred in permitting an award of punitive damages to the appellee.

"V. The trial judge erred in extending injunctive relief to the appellee."

The first and second assignments of error are interrelated and shall be addressed simultaneously.

 In the first two assignments of error, appellant argues that the trial court erred in excluding portions of McCord's testimony and the documentary proffer. We find this assertion unpersuasive on a variety of grounds.

In his answer to appellee's second amended complaint, appellant failed to assert illegality as a defense. Illegality is an affirmative defense which must be set forth with specificity. Civ.R. 8(C). In the case *sub judice,* appellant failed to ameliorate his error by moving to conform his pleadings with the evidence

pursuant to Civ.R. 15(B). As noted above, the motion was denied by the trial court. Consequently, it is arguable as to whether any assignments of error relating to the alleged illegality are properly before this court.

Pleading infirmities notwithstanding, appellant's contentions are tenuous. Appellant was not precluded from presenting other evidence relating to the alleged improprieties. To the contrary, appellant and several other witnesses were permitted to address the issue of illegality.

Appellant is pressed to maintain that he was prejudiced by the exclusion of the evidence at issue. In accord with Evid.R. 103(A), "[e]rror may not be predicated upon a ruling which * * * excludes evidence unless a substantial right of the party is affected * * *." No right of appellant could be impaired where, as in the present action, a substantial volume of other evidence was admitted in support of the illegality defense.

 Where evidence is of a cumulative nature, it may be properly excluded at the discretion of the trial court. This standard applies to evidence which is otherwise probative. Evid.R. 403(B).[2] An abuse of such discretion connotes behavior by the trial court which is arbitrary, unreasonable, or unconscionable. *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 222, 24 O.O.3d 322, 324, 436 N.E.2d 1008, 1011.

Additionally, the probative nature of the excluded evidence is, at best, arguable. Timothy McCord testified that he neither observed nor heard of any activity which would be indicative of tax fraud. The excluded proffer of documentary evidence appears to relate primarily to the activities of appellee's corporate client, rather than appellee itself. If the trial court had determined that this evidence could cause the jury to confuse the issue of the client's culpability with that of appellee, its exclusion would be mandatory. Evid.R. 403(A).[3]

Given the questionable probative quality of the excluded proffers, as well as the potential for the presentation of cumulative evidence, we cannot find that there was an abuse of discretion by the trial court.

 Appellant also assigns as error, the failure of the trial court to give the jury the following instruction relating to the issue of illegality:

---

**2.** Evid.R. 403(B) provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."

**3.** Evid.R. 403(A) states:

"Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

" * * * [Defendant] raised an affirmative defense to * * * [the] breach of contract claim * * * [that defendant] claims that his employment agreement with * * * [plaintiff] involved the performance of an unlawful activity, and thus the entire agreement is unenforceable against * * * [defendant].

"If you find by a preponderance of the evidence that * * * [defendant's] employment agreement required him to perform unlawful activity, then you must find in favor of * * * [defendant], that the entire agreement was not enforceable against him."

█ We cannot conclusively state that the employment contract between the parties required appellant to perform an illegal activity. The contract called for appellant to perform services for appellee as an accountant. Nothing in the explicit language of the contract suggests illegality. There is no indication within the four corners of the agreement that appellee contemplated or expected any acts from appellant which should be void for reasons of public policy. The allegedly illegal activities may be construed as being beyond the intended scope of the employment contract. Therefore, we decline appellant's recommendation that we interpret the employment contract as being illegal on a *de facto* basis. See, generally, Farnsworth, Contracts (1990) 2–7, Section 5.1.

█ Finally, there is a strong presumption in favor of the propriety of jury instructions. Instructions which, in their totality, are sufficiently clear to permit the jury to understand the relevant law shall not be the cause of a reversal upon appeal. *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 210, 24 O.O.3d 316, 317, 436 N.E.2d 1001, 1003.

In the case, *sub judice*, the trial court made reference to appellant's charges of illegality. The court also provided the jury with general instructions relating to a breach of contract on the part of appellee. The instructions were clear and, given the deficiency of the pleadings in his answer, more than fair to appellant.

For the foregoing reasons, appellant's first and second assignments of error are overruled.

█ The remaining assignments of error relate to the trial court's denial of appellant's motion for judgment notwithstanding the verdict ("JNOV"). In reviewing this motion, we must construe the evidence most strongly in favor of appellee. Without weighing the evidence, this court must determine whether reasonable minds are compelled to reach a conclusion which is adverse to the nonmoving party. *Starinki v. Pace* (1987), 41 Ohio App.3d 200, 204, 535 N.E.2d 328, 332. Appellant may prevail only if such analysis necessitates a conclusion against appellee.

■ In his third assignment of error, appellant contends that appellee failed to present sufficient evidence to support the jury's award of compensatory damages.

■ Appellee maintained that it was entitled to compensatory damages for lost profits due to appellant's breach of the noncompetition clause. A three-part test outlines when lost profits may be recovered in a breach of contract action. The lost profits must be "(1) * * * within the contemplation of the parties at the time the contract was made, (2) * * * the probable result of the breach of contract, and (3) * * * not remote and speculative and may be shown with reasonable certainty." *Charles R. Combs Trucking, Inc. v. Internatl. Harvester Co.* (1984), 12 Ohio St.3d 241, 12 OBR 322, 466 N.E.2d 883, paragraph two of the syllabus.

According to appellant, appellee failed to meet the third part of the *Combs* test.

Appellant first maintains that the jury's measure of compensatory damages was uncertain since it failed to account for appellee's costs of doing business. This assertion must fail.

At trial, appellee presented evidence to support the contention that the figures for lost profits were accurate. Appellee's witnesses testified that the business which appellant wrongfully appropriated could have been undertaken by appellee without incurring any additional costs. The witnesses asserted that appellee could have produced this result due to its ability to delegate the work among its extensive staff.

Appellant also claims that the lost profits were speculative because appellee was actually operating at a loss during the time he was soliciting clients away from appellee. In support of this contention, appellant proffered testimony and exhibits which indicated that appellee incurred financial losses in March 1987, and anticipated losses through the remainder of the calendar year. The exhibits were precluded by the trial court as irrelevant and lacking a proper foundation.

■ As appellee noted, the time span of appellant's financial data did not correspond with the period when it was suffering damages from appellant's breach of contract. Appellee also asserted, without contradiction, that it was a going business at the time of trial. Unlike a fledgling enterprise, a going business may maintain that lost revenues, in the absence of profitability, are sufficiently tangible to serve as the basis for compensatory damages. *Brookridge Party Ctr., Inc. v. Fisher Foods, Inc.* (1983), 12 Ohio App.3d 130, 136, 12 OBR 451, 457, 468 N.E.2d 63, 70.

Construing the evidence in a manner most favorable to appellee, we find a sufficient basis for the jury's award of compensatory damages against appellant. Consequently, the third assignment of error is overruled.

■ Through the fourth assignment of error, appellant contests the jury's award of punitive damages to appellee.

■ Appellee is entitled to recover punitive damages for those tortious acts committed by appellant which involve actual malice. *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174; *Calmes v. Goodyear Tire & Rubber Co.* (1991), 61 Ohio St.3d 470, 575 N.E.2d 416. Claims were set forth by appellee for unfair competition and breach of fiduciary duty. Malice was also alleged against appellant. Therefore, several torts were asserted, and the jury's award of punitive damages was not facially invalid.

■ Actual malice consists of either of the following circumstances: (1) a state of mind causing conduct which is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of others which results in a strong probability of substantial harm to affected persons. *Calmes, supra*, at 473, 575 N.E.2d at 419, citing *Preston, supra*, at syllabus.

Evidence was presented at trial which established that appellant repeatedly, over the course of several years, solicited business from appellee's clients. These actions were in flagrant violation of the noncompetition clause, and were openly acknowledged by appellant. Injunctions, contempt orders and other sanctions by the trial court failed to deter appellant from his egregious conduct.

■ Appellant correctly maintains that punitive damages may not be recovered in a simple claim for breach of contract. *Digital & Analog Design Corp. v. North Supply Co.* (1989), 44 Ohio St.3d 36, 46, 540 N.E.2d 1358, 1367. However, his continued and aggressive violations of the noncompetition clause and disregard for subsequent enforcement efforts by the court of common pleas may be construed as constituting a separate tortious action.

Appellant's behavior suggests a conscious disdain for appellee's rights under the employment contract. His actions also caused appellee substantial harm which was not entirely addressed through an award of compensatory damages.

Again, construing the evidence in appellee's favor, actual malice may be found against appellant. Consequently, the award of punitive damages was not inappropriate.

Appellant's fourth assignment of error is not well taken and is overruled.

■ In his final assignment of error, appellant contends that the trial court's decision to extend the injunction in favor of appellee was improper. This

assertion was also the subject of appellant's motion for JNOV. Appellant's arguments here are also not persuasive.

"An injunction * * * is not available as a right but may be granted by a court if it is necessary to prevent a future wrong that the law cannot. * * * " *Garono v. State* (1988), 37 Ohio St.3d 171, 173, 524 N.E.2d 496, 498. Appellant questions the existence of an irreparable injury beyond the scope of the jury's award of compensatory damages, and claims that the length of the injunction is onerous in relation to the provisions of the employment contract.

Appellee established that appellant secured approximately $100,000 in fees from clients which he had solicited in violation of the noncompetition clause. Most of the clients, however, testified that appellant's termination effected the end of their business relationship with appellee. Consequently, appellee was unable to conclusively establish any right to compensatory damages beyond the sum of $9,400.

There is no additional recourse under the law for appellee other than injunctive relief. Absent such a remedy, parties such as appellant would be able to breach noncompetition clauses with impunity whenever they gained the loyalty of their improperly solicited clients. The decision of the court of common pleas to extend injunctive relief against appellant allows appellee to receive the benefit of the bargain of the employment contract, and obtain some remedy for the irreparable damage committed to its client base.

In considering the length of the injunction, the trial court was required to balance the interests of the parties. Given the egregious nature of appellant's actions and the considerable period of time over which they occurred, we cannot find that it was error for the court of common pleas to provide appellee with injunctive relief and to extend such a remedy beyond the length of time originally stated in the noncompetition clause. The court was not obliged, as a matter of law, to limit the injunction to the terms of the restrictive period. *Rogers v. Runfola & Assoc., Inc.* (1991), 57 Ohio St.3d 5, 9, 565 N.E.2d 540, 544.

The fifth assignment of error is overruled.

For the foregoing reasons, appellant's assignments of error are overruled. The judgment of the court of common pleas is hereby affirmed.

*Judgment affirmed.*

DESHLER and TYACK, JJ., concur.

WILLIAM J. MARTIN, J., of the Carroll County Court of Common Pleas, sitting by assignment.