OPINION
{¶ 1} The defendant-appellant, Ronald L. Farr, appeals the judgment of the Seneca County Common Pleas Court convicting him of sexual battery and sexual imposition, classifying him as a sexual predator, and sentencing him to an aggregate prison term of four years.
 {¶ 2} On November 9, 2005, Farr was indicted on one count of rape, a violation of R.C. 2907.02(A)(2), a first degree felony; and five counts of gross sexual imposition, violations of R.C. 2907.05(A)(1); felonies of the fourth degree. The indictment resulted after the Tiffin Police Department investigated a complaint made by the victim's mother. The investigation revealed that Farr had sexually abused his stepdaughter by touching her bare buttocks and vagina when he believed she was asleep. On one occasion, Farr digitally penetrated the victim's vagina.
 {¶ 3} A three-day jury trial commenced on February 27, 2006. The jury found Farr guilty on one count of sexual battery, a lesser-included-offense of rape, and five counts of sexual imposition, lesser-included-offenses of gross sexual imposition. Subsequently, the trial court classified Farr as a sexual predator and sentenced him to four years in prison for sexual battery and 60 days in jail on each count of sexual imposition. The court ordered each term of imprisonment to be *Page 3 
served concurrently. Farr appeals the trial court's judgment and asserts five assignments of error for our review.[1]
 First Assignment of Error The trial court abused its discretion in refusing to excuse a juror for cause, in violation of the appellant's right to trial by an impartial jury under Section 10, Article I of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution.
 Second Assignment of Error The trial court erred by defining vaginal cavity broadly.
 Third Assignment of Error The evidence presented at trail [sic] was insufficient to sustain a verdict of guilty on the lesser included charge of sexual battery.
 Fourth Assignment of Error Appellant's conviction for sexual battery is against the manifest weight of the evidence, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution.
 Fifth Assignment of Error The court erred and abused its discretion in designating the appellant as a sexual predator without making the required findings.
 {¶ 4} In the first assignment of error, Farr relies on Section 10, Article I of the Ohio Constitution, Crim.R. 24(B), and R.C. 2313.42 in arguing that the trial *Page 4 
court erred by not dismissing for cause a Seneca County deputy sheriff, William Herrig. Farr contends that Herrig had "on numerous occasions during his twenty-three (23) years of service worked with the investigating officer, Detective Pauley[,]" and that Herrig and Pauley were both stationed at the Seneca County Jail. Farr contends he was prejudiced because he had to use a peremptory challenge to dismiss Herring, who should have been dismissed for cause.
 {¶ 5} In response, the State contends that the trial court did not abuse its discretion when it denied the challenge for cause to Herrig. The State argues that employment in law enforcement is not enough to disqualify a prospective juror, and Herrig's answers during voir dire did not show bias or prejudice.
 {¶ 6} If a prospective juror is challenged for cause, "the trial judge must determine, on a case-by-case basis, whether the juror `is possessed of a state of mind evincing enmity or bias.'" State v. Murphy,91 Ohio St.3d 516, 525, 2001-Ohio-112, 747 N.E.2d 765, quoting Crim.R. 24(B)(9). The trial court's ruling on a challenge for cause will not be disturbed on appeal absent an abuse of discretion. Id., at 526, citing State v.Wilson (1972), 29 Ohio St.2d 203, 211, 280 N.E.2d 915. An "`abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, quoting *Page 5 State v. Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144, internal citations omitted.
 {¶ 7} Section 10, Article I of the Ohio Constitution provides, "[i]n any trial, in any court, the party accused shall be allowed * * * a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed[.]" Under Crim.R. 24(C)(9), the defendant may challenge for cause
 [t]hat the juror is possessed of a state of mind evincing enmity or bias toward the defendant or the state, but no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence that the juror will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.
Finally, R.C. 2313.42(J) states, "[t]he following are good causes for challenge to any person called as a juror: [t]hat he discloses by his answers that he cannot be a fair and impartial juror or will not follow the law as given to him by the court."
 {¶ 8} The first time attention was drawn to Herrig was during the court's voir dire. The trial court asked, "[d]o any of you know Detective Pauley?" (Trial Tr., Sep. 1, 2006, at 30:24). Several jurors, including Herrig, responded in the affirmative. In response to the trial court's questions, Herrig stated that he is a Seneca County deputy sheriff; that he had at least a professional relationship with Detective Pauley; and that his career would not prevent him from being a fair and *Page 6 
impartial juror. (Trial Tr., at 30:10-24). Herrig later indicated that he had been in court for reasons other than jury service. (Trial Tr., at 62:19-24).
 {¶ 9} Defense counsel utilized the opportunity to question Herrig further:
 Mr. Kahler: * * * Uh, Mr. Herrig, [Farr's] been in the County Jail for three month. Have you seen him there?
 Prospective Juror: No, sir.
 Mr. Kahler: No. Now, you're an active patrolling Deputy Sheriff for Seneca County, right?
 Prospective Juror: Yes, sir.
 Mr. Kahler: Uh, you're not a Corrections Officer certainly, right?
 Prospective Juror: Right.
 Mr. Kahler: Now, you've worked with Deputy Pauley or, uh, I'm sorry, Detective Pauley who is the Prosecutor's, uh — uh, advisor and the lead — lead police officer in this case for the State right?
 Prospective Juror: (Nodding head indicated, yes.)
 Mr. Kahler: Now, how long have you been a Deputy Sheriff?
 Prospective Juror: Twenty-three years?
 * * *
 Mr. Kahler: * * * How would you be able to be fair in this case? *Page 7 
 Prospective Juror: I believe I could be because I've had a lot of experience in law enforcement and seen different cases. Uhm, I will like — the Judge instructs as to — look at the facts of the case and hopefully come up with some conclusions.
 Mr. Kahler: If it is suggested to you in the course of the trial that Detective Pauley errored [sic], didn't do his completed job as he should have.
 Mr. Kahler: Then, would you really take that bull by the horns and make a judgmental decision he didn't do all of his job? Would you really, really take that bull by the horns even though you work with this man?
 Prospective Juror: Yes, I believe I could.
(Trial Tr., at 77-78).When Farr requested Herrig's dismissal for cause, the court asked Herrig an additional question. Specifically, the court asked:
 [i]n your heart, in your mind, can you set aside your experiences, lifetime experiences to listen carefully to all the evidence in this case from the witness stand, the testimony, from the exhibits, weigh that testimony, judge the credibility of the witnesses, apply the law and render a fair and impartial verdict not because you're a Deputy Sheriff [but] because you're a member of the community of Seneca County?
(Trial Tr., at 79:16-24). Herrig responded, "I believe I can, Your Honor." (Trial Tr., at 79-80). After some discussion outside the hearing of the potential jurors, *Page 8 
the trial court denied Farr's request based on the totality of the circumstances. (Trial Tr., at 80-85).
 {¶ 10} On the record of this case, we cannot hold that the trial court abused its discretion when it denied Farr's request to dismiss Herrig for cause. In Murphy, a police officer was called as a prospective juror. The court noted that the prospective juror had not worked for the investigating agency and that he had not exhibited any bias during voir dire. Murphy, at 527. Similarly, the Ohio Supreme Court found no abuse of discretion where a trial court did not dismiss a parole officer for cause in the sentencing stage of a capital case. State v. Braden,98 Ohio St.3d 354, 2003-Ohio-1325, 785 N.E.2d 439, at ¶ 37. After the parole officer stated, "`if someone takes a life and it is a premeditated act, * * * they should pay with their life[,]'" he was questioned further. The Supreme Court held, "[t]he fact that Wallery was a parole officer did not disqualify him from sitting as a juror, and his other answers showed that he was open-minded and would fairly consider the evidence." Id.
 {¶ 11} In this case, Herrig told the trial court that he had worked with Detective Pauley on prior occasions, that the Seneca County Sheriffs Office had not been the investigating agency in this case, that he could fairly assess Detective Pauley's credibility, and that he could follow the court's instructions. Herrig also agreed that mistakes can be made during criminal investigations. (Trial Tr., at *Page 9 
107). Although the sheriff's office is located inside the Seneca County Jail, there was no evidence of contact between Farr and Herrig. On this record, the trial court did not abuse its discretion, and the first assignment of error is overruled.
 {¶ 12} In the second assignment of error, Farr contends the trial court erred by broadly defining the term "vaginal cavity" in its instructions to the jury. Farr contends that the term "vaginal cavity" is not defined by statute, so the trial court should have used the "common, everyday meaning" of the word "cavity," which is "`a natural hollow place within the body.'" Farr argues that the trial court's definition was too broad because it included the exterior portions of the vagina.
 {¶ 13} The State responds, arguing that the court defined "vaginal cavity" in conformity with those definitions used by other courts across the state. In the alternative, the State argues that even if the trial court erred by defining "vaginal cavity" too broadly, the error was harmless, as the evidence proved that Farr had penetrated the victim's vagina with either one or two fingers up to approximately the second knuckle.
 {¶ 14} We are required to presume "`the propriety of jury instructions.'" State v. Calderon, 10th Dist. No. 05AP-1151,2007-Ohio-377, at ¶ 54, quoting Arthur Young Co. v. Kelly (1993),88 Ohio App.3d 343, 350, 623 N.E.2d 1303, cause dismissed,67 Ohio St.3d 1462, citing Schade v. Carnegie Body Co. (1982), *Page 10 70 Ohio St.2d 207, 210, 436 N.E.2d 1001; see also, Burns v. PrudentialSecurities, Inc., 167 Ohio App.3d 809, 2006-Ohio-3550, 857 N.E.2d 621, at ¶ 41.
 "If, taken in their entirety, [jury] instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled. Moreover, misstatements and ambiguity in a portion of the instructions will not constitute reversible error unless the instructions are so misleading that they prejudicially affect a substantial right of the complaining party."
Id., quoting Toth v. Oberlin Clinic, Inc., 9th Dist. No. 01 CA007891, 2002-Ohio-2211, at ¶ 45, appeal not allowed, 96 Ohio St.3d 1495,2002-Ohio-4534, 774 N.E.2d 767, quoting Wozniak v. Wozniak (1993),90 Ohio App.3d 400, 410, 629 N.E.2d 500, cause dismissed,68 Ohio St.3d 1440, 626 N.E.2d 124 (citations omitted.). "Whether jury instructions correctly state the law is a question of law that an appellate court reviews de novo." Id., citing Burns, at ¶ 41, citing Murphy v. CarolltonMfg. Co. (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828.
 {¶ 15} Relevant to this assignment of error, Farr was charged with rape. The court instructed the jury on rape and the lesser included offense of sexual battery, both of which require the State to prove sexual conduct. R.C. 2907.01(A) defines "sexual conduct" as "* * * the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." *Page 11 
 {¶ 16} During its instructions, the trial court did not define the phrase "vaginal cavity." However, the jury's first question to the court was, "`The legal definition of vaginal — of the vaginal cavity. The legal definition of the vagina — vaginal cavity?" (Trial Tr., at 543:3-5). After discussing the situation with counsel, the court answered the jury by stating:
 "The vagina is the hollow passage leading from the uterus of the female body outward to exterior genitalia or vulva, or which is comprised of lip-like folds of skin called the labia majora.
 The term vaginal cavity refers to the entire anatomical process and any part of it. The laws of the State of Ohio do not define vaginal cavity different from that in common usage."
(Trial Tr., at 543-544). The jury subsequently sent the following, related question to the court:
 [a]s the only juror who is not agreeable of the lesser charge due to my evaluation of the evidence, sexual conduct as read into the vaginal cavity. Also contained in sexual battery engage in sexual conduct. Is there assistance other than the definition or a less inclusive definition? * * * Is the vulva part of the vaginal cavity?
(Trial Tr., at 548:6-13). The court answered this question, stating:
 "[t]he definition of sexual conduct has been provided to you. Sexual conduct means, in this case, the insertion, however slight, of any part of the body; i.e. finger/fingers into the vaginal cavity of [the victim]. Penetration, however slight, is sufficient to complete vaginal intercourse.
 The vulva is part of the vaginal cavity. Therefore, if the finger/fingers is introduced with sufficient force to cause the labia majora to spread penetration has occurred." *Page 12 
(Trial Tr., at 548-549).
 {¶ 17} Chapter 29 of the Revised Code does not define, and there is no model jury instruction for, the phrase "vaginal cavity." Review of relevant case law leads us to the opinion that the trial court did not err in responding to the jury's questions. The Tenth District Court of Appeals, relying on opinions from several other appellate districts, has held that sexual conduct via vaginal penetration is proved if the victim's labia are penetrated. State v. Roberts, 10th Dist. No. C-040547, 2005-Ohio-6391, at ¶ 62, f.n. 11, citing State v. Grant, 2nd Dist. No. 19824, 2003-Ohio-7240; State v. Falkenstein, 8th Dist. No. 83316, 2004-Ohio-2561; State v. Blankenship (Dec. 13, 2001), 8th Dist. No. 77900, unreported; State v. Childers (Dec. 19, 1996), 10th Dist. No. 96APA05-640-640, unreported; State v. Nivens (May 28, 1996), 10th Dist. No. 95 APA09-1236, unreported; State v. Ulis (July 22, 1994), 6th Dist. No. L-93-247, unreported; State v. Carpenter (1989), 60 Ohio App.3d 104,573 N.E.2d 1206. The Second Appellate District has stated:
 "The vagina is the hollow passage leading from the uterus of the female body outward to the exterior genitalia, or vulva, which is comprised of lip-like folds of skin called the labia majora. The term `vaginal cavity' refers to that entire anatomical process and any part of it.
 Penetration of the vaginal cavity requires introduction of an object from without, which necessarily implies some forceful spreading of the labia majora. The penetration need only be `slight.' R.C. 2907.01(A). Therefore, if the object is introduced *Page 13 with sufficient force to cause the labia majora to spread, penetration has occurred."
State v. Brewer, 2nd Dist. No. 03CA0074, 2004-Ohio-3572, at ¶ 31-32, quoting Grant, at ¶ 9. In this case, the trial court closely followed the language used in Brewer, and we cannot find error in its decision to do so. The second assignment of error is overruled.
 {¶ 18} In the third assignment of error, Farr contends the State presented insufficient evidence of sexual conduct to support his conviction for sexual battery. "When reviewing the sufficiency of the evidence, `[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. Luikart, 3rd Dist. No. 9-06-35,2007-Ohio-770, at ¶ 6, quoting State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, at paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in State v. Smith,80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668.
 {¶ 19} Both rape and sexual battery require the State to prove the essential element of sexual conduct. R.C. 2907.02(A)(2); 2907.03(A). As stated above, sexual conduct requires penetration. R.C. 2907.01(A). In this case, the victim testified that Farr inserted two fingers into her vagina. (Trial Tr., at 214-216). The victim estimated that Farr had penetrated her up to the second knuckles on his *Page 14 
fingers and stated that she felt pain in her vagina when he did so. (Trial Tr., at 214-216). On cross-examination, the victim admitted telling Detective Pauley that Farr had inserted only one finger into her vagina. (Trial Tr., at 246). Upon further questioning, the victim admitted some doubt as to how many fingers Farr had used, but stated she was "100%" sure that penetration had occurred. (Trial Tr., at 251). Although Farr denied penetration of his stepdaughter's vagina, we must construe the evidence in favor of the State, and the evidence is sufficient to prove that sexual conduct occurred. On this record, the third assignment of error is overruled.
 {¶ 20} In the fourth assignment of error, Farr challenges his conviction for sexual battery based on the manifest weight of the evidence. Specifically, he contends the jury did not understand the definition of "vaginal cavity" provided by the trial court. The State argues that the jury's questions evidence their diligence in applying the law to the facts, not confusion.
 Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."
(Emphasis in original). State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, quoting Black's Law Dictionary (6th ed. 1990) 1594, *Page 15 
superseded by state constitutional amendment on other grounds inSmith. When a defendant challenges his conviction as being against the manifest weight of the evidence, the appellate court must act as a thirteenth juror. Id. As such, the court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new hearing ordered. State v.Adkins, 3rd Dist. No. 5-97-31, 1999-Ohio-881, citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717;Thompkins, at 387. However, issues concerning witness credibility and weight of the evidence are better left to the finder of fact because it is able to observe the witnesses' demeanors and hear the testimony.State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, at paragraph one of the syllabus.
 {¶ 21} Farr was convicted of sexual battery, in violation of R.C.2907.03(A)(5), which states: "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply: * * * [t]he offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person." In this case, the facts are undisputed that Farr was the victim's stepfather and that the victim was not Farr's spouse. Therefore, the only disputed element is whether sexual conduct occurred. *Page 16 
 {¶ 22} To prove its case, the State presented testimony from a friend of the victim, the victim's mother, the victim, and Detective Pauley. The victim's friend testified that she stayed in the victim's home at a sleepover. Around 2:30 a.m. on August 11, 2005, the victim told her about something disturbing that had occurred. The victim's mother testified that one time she caught her daughter and Farr sitting on the couch together at 2:00 or 3:00 a.m. and that she thought it strange that the victim's buttocks were resting against Farr under a blanket. The mother testified that on August 11, 2005, the victim told her Farr had touched her inappropriately. The mother testified that Farr often patted or pinched both her's and the children's buttocks. She also stated that he had a problem with his temper.
 {¶ 23} The victim testified that Farr intimidated her because he had hit her and because he had a bad temper, although she admitted that she had been disobedient. As to the offense, the victim testified that Farr used two fingers to penetrate her vagina on one occasion. She testified that Farr was breathing heavily and mumbling something indiscernible and that he kept his fingers in her for a "few minutes." On cross-examination, the victim stated that she told Detective Pauley, but not her mother, about the penetration. She stated she was "99.9%" sure about the number of fingers Farr had used, but that she was "100%" sure he had penetrated her vagina because she felt pain when he did it. *Page 17 
 {¶ 24} Detective Pauley testified that Farr was not under arrest at the time he was interviewed. Detective Pauley spoke with the mother and then the victim prior to speaking with Farr. During the detective's testimony, the State played a video tape of Farr's interview, which was admitted into evidence as State's Exhibit 1. A transcript of the interview was also prepared, but not shown to the jury. The transcript was marked as Court Exhibit 1. During his interview, Farr admitted to touching the victim's buttocks and vagina; however, his statements concerning penetration were less clear, varying from denial to something he could not remember.
 {¶ 25} Farr testified on his own behalf. He also presented testimony from two of his nine sisters and from one of his brothers-in-law. The sisters and brother-in-law all testified that Farr grew up in a "touchy feely" home where family members frequently hug and kiss each other. Each witness testified that they see Farr only several times each year at family gatherings. One of Farr's sisters, Renae Shank, stated that Farr is "laid back," but that she was not surprised to learn of an incident where the police were called to Farr's house after he hit the victim. The other sister, Diana Farr, admitted that she does not know what happened when Farr was alone with his family in Tiffin. The brother-in-law, Richard Loga, testified that he had never visited Farr in Tiffin and that he would not know what happens "behind closed doors." *Page 18 
 {¶ 26} On his own behalf, Farr admitted touching the victim's buttocks and vagina both over and under her underwear. He stated that he reached into her clothing because he likes skin to skin contact, and he thought he was showing affection for his stepdaughter. Farr stated that when he touched the victim's vaginal lips, he would pull his hand away because he knew it was wrong, but he denied penetrating the victim's vagina. He also testified as to his character, admitting that he raises his voice and that he has hit the victim; however, he testified that the physical contact was infrequent and intended to discipline an unruly teenager.
 {¶ 27} There was no physical evidence of sexual conduct in this case, so the jury was faced with a "he-said, she-said" situation. The jury heard the conflicting testimony concerning Farr's temperament and whether he beat his stepdaughter out of anger or as an attempt to discipline her. The jury observed both Farr and the victim as they testified. After hearing the testimony and observing the witnesses' demeanors, the jury apparently found the victim more credible than Farr. Based on this record, we cannot find that the jury clearly lost its way. The fourth assignment of error is overruled.
 {¶ 28} In the fifth assignment of error, Farr contends that trial court classified him as a sexual predator without following R.C.2950.09. Farr contends that the trial court failed to make a finding on the record as to the likelihood of *Page 19 
recidivism, and that the factors considered by the trial court require a finding of recidivism unlikely. In response, the State contends there was clear and convincing evidence to show the likelihood of recidivism.
 {¶ 29} The term "sexual predator" is a defined as a person who has "been convicted of committing a sexually oriented offense that is not a registration-exempt sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C.2950.01(E)(1). Both sexual battery and sexual imposition are "sexually oriented offenses." R.C. 2907.03(A)(5), 2907.06(A)(4), 2950.01(D)(1)(a),2950.01(D)(1)(b)(i). Unless the offense qualifies the offender for automatic sexual predator status under R.C. 2950.09(A), the trial court must hold a hearing prior to sentencing to determine if the offender is a sexual predator. R.C. 2950.09(B)(1), (2). In making a sexual predator determination, R.C. 2950.09(B)(3) requires the trial court to "consider all relevant factors," including:
 (a) The offender's * * * age;
 (b) The offender's * * * prior criminal or delinquency record regarding all offenses, including but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed * * *;
 (d) Whether the sexually oriented offense for which sentence *Page 20 is to be imposed * * * involved multiple victims;
 (e) Whether the offender . . . used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender * * * previously has been convicted of or pleaded guilty to * * * a criminal offense, whether the offender * * * completed any sentence * * * imposed for the prior offense or act and, if the prior offense or act was a sexual offense or a sexually oriented offense, whether the offender * * * participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender * *
 (h) The nature of the offender's * * * sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender * * *, during the commission of the sexually oriented offense for which sentence is to be imposed * * * displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's * * * conduct.
R.C. 2950.09(B)(3)(a)-(j). In applying these factors, courts should "consider the relevance, application, and persuasiveness of individual circumstances on a case-by-case basis." State v. Robertson,147 Ohio App.3d 94, 2002-Ohio-494, 768 N.E.2d 1207, at ¶ 20, citing State v.Dennis, 3rd Dist. No. 8-2000-08, 2000-Ohio-1853; State v. Dewitt, 3rd Dist. No. 14-2000-21, 2000-Ohio-1696. *Page 21 
 {¶ 30} In reviewing the evidence and the statutory factors, the trial court must determine by clear and convincing evidence whether the offender is a sexual predator. R.C. 2950.09(B)(4).
 Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal .
(Emphasis in original). Cross v. Ledford (1954), 161 Ohio St. 469, 477,120 N.E.2d 118, citing Merrick v. Ditzler (1915), 91 Ohio St. 256, 110 N.E. 493. On appeal, we must review the entire record to determine whether the manifest weight of the evidence satisfies the clear and convincing standard. State v. Schiebel (1990), 55 Ohio St.3d 71, 74,564 N.E.2d 54.
The trial court conducted the sexual predator hearing prior to sentencing. At that time, the parties stipulated to all of the trial testimony and the pre-sentence investigation. While neither the State nor Farr presented any additional evidence, both parties made a brief argument in support of their respective requests. The trial court then considered the factors of R.C. 2950.09(B)(3). In particular, the court considered that the victim was 13 or 14 years old when the abuse occurred; that Farr was 20 years older than the victim; that there were not multiple victims; that Farr used no drugs or alcohol; that neither Farr nor the victim are affected by *Page 22 
mental illness or disability; and that Farr's actions were part of a demonstrative pattern of abuse. The court also stated that it had considered "any additional behavior characteristics that contribute to the offender's conduct." The trial court considered the trial testimony, and it considered the pre-sentence investigation. In a section of the pre-sentence investigation, entitled "Offender's Version," is the following admission:
 On 3/6/06, the offender was interviewed by this officer in reference to the Instant Offense. He wrote the following: "I would pinch and rub my stepdaughters [sic] behind. I told the detective I had touched her 4 or 5 times and I didn't think that I had but I may have put the tip of my finger in her."
(Sentencing Tr., Sept. 1, 2006, at Court's Ex. 1).
 {¶ 31} On this record, there is clear and convincing evidence to indicate the likelihood of recidivism. Aside from two traffic violations, Farr lacked a criminal record prior to this case. The trial court considered the circumstances of the case before it and apparently gave greater weight to the facts of this case than it gave the other statutory factors. See Robertson, at ¶ 25, citing R.C. 2950.09(B)(2);State v. Eaton, 2nd Dist. No. 18690, 2001-Ohio-1760; State v.Queary, 2nd Dist. No. 18300, 2001-Ohio-1491 ("[c]ircumstances within the underlying offense are often especially indicative of the offender's likelihood to reoffend sexually, and the weight of such evidence can, without more, support the designation of sexual predator by clear-and-convincing evidence."). See also State v. Thompson, *Page 23 92 Ohio St.3d 584, 2001-Ohio-1288, 752 N.E.2d 276, at paragraph one of the syllabus, (the "judge must consider the guidelines set out in R.C.2950.09(B)(2) but the judge has discretion to determine what weight, if any, he or she will assign to each guideline."). Accordingly, the fifth assignment of error is overruled. {¶ 32} Having overruled the five assignments of error presented, the judgment of the Seneca County Common Pleas Court is affirmed.
Judgment affirmed.
 ROGERS and PRESTON, J.J. concur.
[1] We initially had some concern about the propriety of the verdict forms used in this case. Therefore, we sua sponte requested supplemental briefs on that issue. We note that the preferred practice would be for the trial court to use a more specific verdict form. However, we decline to address the issue further. *Page 1