JOURNAL ENTRY AND OPINION.
{¶ 1} Defendant-appellant, Furs by Weiss, Inc. ("Weiss Furs" or "appellant"), appeals from the judgment of the Cuyahoga County Court of Common Pleas, rendered after a jury verdict, finding Weiss Furs liable to plaintiff-appellee, Margaret A. Arales, on her claims of fraud and violation of the Ohio Consumer Sales Practices Act, and awarding Arales $15,000 in compensatory damages and $50,000 in punitive damages. For the reasons that follow, we affirm.
 {¶ 2} Arales filed her initial complaint in this matter in April 1997 against Weiss Furs. She subsequently filed an amended complaint in which she named Howard Weiss, President of Weiss Furs, and Edythe Magduff, a Weiss Furs sales representative, as additional defendants. After the trial court granted summary judgment in favor of the defendants, this court reversed and remanded the matter to the trial court for a determination of Arales' claims. See Arales v. Furs byWeiss, Inc. (Jan. 12, 1999), Cuyahoga App. No. 74301.
 {¶ 3} On remand, the case proceeded to a jury trial. The trial court bifurcated the issues of liability and damages and the jury found in favor of defendants. On appeal, however, this court determined that it was unclear what issues had been agreed upon for trial and that the jury had not been instructed on appellant's fraud claim. Accordingly, we remanded for a determination of appellant's fraud claim and her claim under the Ohio Consumer Sales Practices Act. See Arales v. Furs byWeiss, Inc. (Dec. 13, 2001), Cuyahoga App. No. 77914.
 {¶ 4} At trial, Arales first called Howard Weiss on cross-examination. Weiss testified that in March 1996, he and Magduff sold Arales a natural mahogany mink furcoat during Weiss Furs' annual half-off sale. Weiss testified further that he had previously sold the same coat to Luiza Yankowski. According to Weiss, Yankowski purchased the coat from him in December 1995, but left the coat at the store so that Weiss Furs could put her monogram in the coat. The next day, however, Yankowski called Weiss and cancelled her order. Weiss then called his warehouse and advised it not to do the monogramming on the coat and to return the coat to the Beachwood store. Weiss testified that the appropriate personnel never got that message, however, because the factory embroidered Yankowski's monogram in the coat and returned it to the store.
 {¶ 5} When a Weiss salesperson subsequently called Yankowski and told her to pick up her coat, she advised the salesperson that she had cancelled her order and suggested that the salesperson check with Weiss. Weiss confirmed that Yankowski had cancelled her order and told the salesperson to send the coat back to the factory so it could be "reworked" and put back in stock. Weiss admitted that although he did not personally do the "reworking," he knew that Yankowski's monogram was in the coat. He also admitted that when he sold the coat to Arales after it had been "reworked," he did not tell her that the lining of the coat had been altered to cover up Yankowski's monogram. Weiss also confirmed that he subsequently wrote a letter to the Better Business Bureau, in response to Arales' complaint, in which he informed the Bureau that he was "very familiar" with the coat that Arales had purchased from him. Weiss testified that there are three acceptable ways in the furrier industry to "rework" the lining to cover up a monogram: 1) replace the entire lining of the coat; 2) replace one of the panels in the lining; or 3) pull up the hem of the lining to cover up the monogram. Weiss testified that the third method was used on Arales' coat: the hem was pulled up to cover up the monogram and an identical seam was added to make each side of the lining match. Weiss testified that he had worked in the fur industry for thirty-five years and admitted that he had "possibly" covered up monograms in other coats and then sold the coats to unsuspecting customers without telling them that the coat they purchased had been "reworked."
 {¶ 6} Arales testified that after seeing a half-off sale advertisement by Weiss Furs in a local newspaper, she telephoned the store, described the type of coat she was looking for and then made an appointment with salesperson Edythe Magduff. When Arales and a friend arrived at the store, Howard Weiss greeted them and offered them a drink. According to Arales, there were no signs anywhere in the store indicating that any of the coats for sale were either used or altered.
 {¶ 7} Magduff showed Arales several coats. According to Arales, as she came out of the vault with the last coat, Magduff stopped and spoke with Weiss for a minute about the coat. Arales testified that after inspecting the coat, she told Magduff that she wanted the coat and wanted Weiss Furs to put her monogram in it. According to Arales, Magduff kept insisting that Arales should not have her monogram put in the coat but should just take it home and wear it. Finally, after Arales' friend suggested they look somewhere else, Magduff agreed to give Arales free summer storage for her coat and told her that Weiss Furs would put her monogram in the coat while it was in storage.
 {¶ 8} Arales testified that she wore the coat once and then put it in storage. When she took it out of storage in December 1996, she was unhappy with the condition of the coat and did not believe that the coat that had been returned to her was the same coat that she had purchased. According to Arales, she brought the coat back to the store and spoke with Magduff, who refused to take the coat back.
 {¶ 9} Upon returning home, Arales inspected the coat more closely. While examining the lining, she discovered a loose thread in one of the seams, which she pulled. Upon pulling the thread, the seam came apart and Arales discovered Yankowski's monogram in the lining of her coat.
 {¶ 10} Arales testified that she would not have purchased the coat if she had known that the coat had been altered to cover up Yankowski's monogram. Arales testified further that after discovering the monogram, she became very upset about the "deception," had significant difficulty sleeping and could not focus on other matters. She finally sought psychiatric help in 1999.
 {¶ 11} Dr. Edward N. Dutton testified that he saw Arales several times in 1999 and 2000. He diagnosed Arales with adjustment disorder with depression and anxiety and concluded that her emotional distress was "directly and causally related" to her problems with Weiss Furs. Dutton testified further that Arales, who is African-American, felt that the employees at Weiss Furs had snickered at her and belittled her when she tried to return the coat. In addition, Dutton testified, Arales developed "almost a crisis of faith" and "had to spend much time with the Elder, much time with her church members in terms of understanding and dealing with this conflict."
 {¶ 12} Arales' husband, Stephen Arales, likewise testified that Arales became extremely distressed over the situation and that, at the time of trial, she was still experiencing emotional trauma related to it. He testified that he finally suggested that she get some help because her emotional distress was interfering with their marriage.
 {¶ 13} Marie L. See, owner of Sabau Furs and president of the Cleveland Fur Institute, testified that she appraised Arales' fur in January 1998 at $6,500.00. In light of its style and the fur pattern, See estimated that Arales' coat was three to six years old when she purchased it from Weiss Furs in 1996. See testified further that Sabau Furs would never sell as new a coat whose lining had been altered to conceal another person's monogram. According to See, the only acceptable procedure to eliminate a monogram from a fur coat is to replace the entire lining. The coat can then be sold as new if it has never left the store.
 {¶ 14} On direct examination by his counsel, Weiss testified that the coat purchased by Arales had come into the store in December 1994, been purchased by Yankowski in December 1995, and then sold to Arales in March 1996. Weiss admitted that the lining was altered to cover up Yankowski's monogram but denied that he was aware of the alteration when he sold the coat to Arales or that he tried to hide anything from her.
 {¶ 15} The deposition of Mark Ayzman was read into the record on behalf of appellant. Ayzman testified that he was retained by Arales to appraise her coat in January 1998. Ayzman appraised the coat at $7,000 and opined that at the time of his appraisal, it was at least two years old. Ayzman testified further that he would consider a coat to be new if a monogram had been put into the coat by mistake but the coat had never left the store.
 {¶ 16} The jury subsequently found in favor of Arales and against Weiss Furs, awarding her $15,000 in compensatory damages and $50,000 in punitive damages. The jury found in favor of defendants Howard Weiss and Edythe Magduff.
 {¶ 17} The jury also answered two interrogatories, finding that Weiss Furs committed an unfair or deceptive act or practice in connection with the sale of the coat to Arales' and the coat was not used when it was sold to Arales in March 1996.
 {¶ 18} Appellant Weiss Furs timely appealed, raising six assignments of error for our review.
 VIOLATION OF OHIO'S CONSUMER SALES PRACTICES ACT {¶ 19} In its first assignment of error, appellant contends that "as a matter of law, appellant did not commit an unfair or deceptive act or practice in violation of Ohio's Consumer Sales Practices Act (CSPA)."
 {¶ 20} R.C. 1345.02 provides, in pertinent part:
 {¶ 21} "(A) No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during or after the transaction.
 {¶ 22} "(B) Without limiting the scope of division (A) of this section, the act or practice of a supplier in representing any of the following is deceptive: * * *
 {¶ 23} "(3) That the subject of a consumer transaction is new, or unused, if it is not."
 {¶ 24} Appellant contends that it did not violate the CSPA because the testimony at trial established that the coat was new when it was purchased. We disagree.
 {¶ 25} R.C. 1345.02(A) simply provides that "no supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." Furthermore, although R.C. 1345.02(B) lists several examples of unfair or deceptive practices, including selling an item as new when it is actually used, R.C. 1345.02(B) specifically provides that its listing does not limit the scope of division (A).
 {¶ 26} Here, there was evidence that appellant altered the lining of the coat to conceal Yankowski's monogram but did not tell Arales about the alteration when she purchased the coat. Indeed, Howard Weiss admitted that no one told Arales about the alteration before she bought it. Under R.C. 1345.02(A), it does not matter whether the coat was new or used when it was purchased; it matters only whether the practice engaged in by the supplier was "unfair" or "deceptive." The jury apparently concluded that appellant's practice of altering the coat but not telling Arales about the alteration was "unfair" or "deceptive," sufficient to find a violation of R.C. 1345.02(A).
 {¶ 27} Appellant's first assignment of error is therefore overruled. On a related issue, in its fifth assignment of error, appellant contends that the jury verdict finding it liable for a violation of the CSPA was inconsistent with the jury's answer to interrogatory two that the coat was not used when it was sold to Arales.
 {¶ 28} As set forth above, however, the jury's finding that the coat was not used is not relevant to its finding that appellant committed an unfair or deceptive practice in not telling Arales about thealteration to the coat before she bought it. Thus, the jury's finding that the coat was not used when purchased is not inconsistent with its finding that it was deceptive to alter the coat, whether new or used, but not tell Arales about the alteration before she bought it.
 {¶ 29} Appellant's fifth assignment of error is therefore overruled.
 FRAUDULENT CONCEALMENT {¶ 30} In its second assignment of error, appellant contends that Arales did not sustain her burden of proof regarding her common law fraud claim.
 {¶ 31} In Ohio, a claim of fraud requires proof of the following elements: 1) a representation or, where there is a duty to disclose, concealment of a fact, 2) which is material to the transaction at hand, 3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, 4) with the intent of misleading another into relying upon it, 5) justifiable reliance upon the representation or concealment, and 6) a resulting injury proximately caused by the reliance. Burr v. Stark Cty. Bd. of Commrs. (1986), 23 Ohio St.3d 69, paragraph two of the syllabus; Duman v. Campbell, Cuyahoga App. No. 79858, 2002-Ohio-2253, at ¶ 21.
 {¶ 32} A claim of fraud "is maintainable not only as a result of affirmative misrepresentations, but also for negative ones, such as the failure of a party * * * to fully disclose facts of a material nature where there exists a duty to speak." Textron Financial Corp. (1996),115 Ohio App.3d 137, 153. Appellee's claim at trial was that appellant concealed the fact that the coat had been altered to hide Yankowski's monogram. Appellant contends, however, that appellee's fraudulent concealment claim fails because there was no evidence that it had a duty to disclose the alteration.
 {¶ 33} It has generally been held that nondisclosure of a fact will become the equivalent of fraudulent concealment when it is the duty of the person to speak in order to place the other party on equal footing with him. Davis v. Sun Refining Marketing Co. (1996),109 Ohio App.3d 42, 55, citing Mancini v. Gorick (1987),41 Ohio App.3d 373, 374. A seller has a duty to disclose material facts that are not "readily observable or discoverable through a purchaser's reasonable inspection." Layman v. Binns (1988), 35 Ohio St.3d 176, 178. A fact is material if it is likely "under the circumstances, to affect the conduct of a reasonable person with reference to the transaction in question." Leal v. Holtvogt (1998), 123 Ohio App.3d 51, 76, quoting VanCamp v. Bradford (1993), 63 Ohio Misc.2d 245, 255.
 {¶ 34} Here, there was evidence adduced at trial that the lining of the coat had been altered in such a way to hide the fact that Yankowksi's monogram had been covered up. Weiss, See and Arales all testified that an extra seam had been added to the lining to make the seams match where the monogram had been covered up and that the hem had been shortened in order to have enough material to cover the monogram. Moreover, Arales testified that she inspected the coat in the store before she bought it but did not observe the alteration. Thus, there was evidence that the alteration was not "readily observable or discoverable" through a reasonable inspection.
 {¶ 35} The record also reflects that on cross-examination, Howard Weiss testified that he was "very familiar" with the coat Arales purchased from Weiss Furs. He testified further that although he did not personally "rework" the coat, he was aware that Yankowski's monogram was in the coat and that it was subsequently covered up. Later, on direct examination, however, Weiss denied that he was aware of the alteration to the coat when he sold it to Arales. Thus, the jury heard conflicting testimony regarding whether Weiss knew when he sold the coat to Arales that the coat had been altered to cover up Yankowski's monogram. In light of this conflicting evidence, the jury could have concluded that if Weiss knew about the concealed monogram when he sold the coat to Arales, he had a duty, as the seller, to tell Arales about the alteration to the coat.
 {¶ 36} Appellant does not assert that Arales failed to meet her burden of proof regarding the other elements of her fraudulent concealment claim. We note, however, that the alteration to the coat was clearly material to the transaction. Arales testified that she would not have purchased the coat if she had been told that it had been altered to cover up Yankowski's monogram. In addition, as intent is rarely provable by direct evidence, it may be inferred from the "totality of the circumstances." Davis, supra, citing Klapchar v. Dunbarton Properties,Ltd. (Nov. 4, 1991), Stark App. No. CA-8521; see, also, Swift v. AlliedPets Control, Montgomery App. No. 18311, 2001-Ohio-1462. Here, considering all the circumstances surrounding the sale, the record supports an inference that appellant avoided telling Arales about the alteration in order to induce her to buy the coat. Moreover, Arales' reliance on appellant's representation that the coat was not altered was reasonable. Appellant was in a superior position to know the status of the coat and Arales testified that she inspected the coat before she bought it and did not discover the concealed monogram. Furthermore, the coat was represented to Arales as new. Although concealing monograms by "reworking" the lining may be common practice in the fur industry, Arales, and for that matter, any other first-time fur buyer, would have no reason to know that a coat represented as new actually had been altered. Finally, Arales testified that as a result of the deception, she suffered emotional distress — an injury proximately caused by her reliance on appellant's misrepresentation about the coat.
 {¶ 37} Because the record supports a finding that Arales sustained her burden of proof regarding all of the elements of her fraudulent concealment claim, appellant's second assignment of error is overruled.
 COMPENSATORY DAMAGES {¶ 38} The jury found appellant liable for fraud and violation of the Ohio Consumer Sales Practices Act and awarded Arales $15,000 in compensatory damages. In its third assignment of error, appellant contends that this award "was inconsistent with relevant Ohio law." Appellant asserts that Arales was not entitled to any damages under the CSPA because there was no evidence presented that its practice of not informing a customer that the coat purchased by the customer had been altered to conceal another purchaser's monogram has previously been declared a deceptive or unfair act. Appellant also contends that the evidence at trial established that "reworking" the lining of a coat to conceal a monogram is an accepted practice in the furrier industry and, therefore, Arales is not entitled to any damages under the CSPA. We disagree.
 {¶ 39} First, there is no requirement that before a consumer may recover damages for a violation of the CSPA, the supplier's "unfair" or "deceptive" act must be specifically prohibited by regulation or determined by a prior court decision to be deceptive. Rather, R.C.1345.09(A), regarding consumer relief for violation of the CSPA, provides that "where the violation was an act prohibited by section 1345.02 or1345.03 of the Revised Code, the consumer may, in an individual action, rescind the transaction or recover his damages." R.C. 1345.02 provides that "no supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." Accordingly, because the jury determined that appellant's concealment of the alteration was an unfair or deceptive practice, Arales was entitled to either rescind the transaction or to recover her damages.
 {¶ 40} Whether an act has been previously declared unfair or deceptive affects only a consumer's right to recover treble damages. Appellant is correct that Arales is not entitled to treble damages because appellant's practice of concealing monograms has not been specifically prohibited by regulation promulgated by the Ohio Attorney General nor declared deceptive by a prior court decision. See R.C. 1345.09(B).
 {¶ 41} Appellant's argument that there was no violation of the CSPA because this is standard practice in the furrier industry is similarly without merit. The jury heard appellant's evidence regarding the practice in the industry but, nevertheless, concluded that appellant's conduct in selling an altered coat to Arales was unfair or deceptive. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v.DeHass (1967), 10 Ohio St.2d 230, 231.
 {¶ 42} With respect to Arales' fraud claim, "the measure of damages for fraud inducing the purchase or exchange of property is the difference between the property as it was represented to be and its actual value at the time of the purchase or exchange." Starinki v. Pace
(1987), 41 Ohio App.3d 200, 202; see, also, Molnar v. Beriswell (1930),122 Ohio St. 348. Appellant argues that because the coat was appraised several years after the sale at several thousand dollars above the sale price, Arales suffered no damage and, therefore, the $15,000 compensatory damage award by the jury was erroneous.
 {¶ 43} The value of the coat several years after its purchase is not the measure of damages, however. The only testimony regarding the actual value of the coat — as altered — at the time of its purchase came from Arales, who testified that she would not have bought it if she had known it had been sold to someone else and subsequently altered to hide that purchaser's monogram; in other words, that the coat was essentially worthless to her because of the concealed alteration. The owner of personal property is permitted to testify as to his or her opinion of its value if he or she has sufficient knowledge to do so.Buchanan, supra, citing Bishop v. East Ohio Gas Co. (1944),143 Ohio St. 541, 546.
 {¶ 44} Moreover, as this court stated in its January 21, 1999 opinion reversing the trial court's grant of summary judgment in favor of the defendants in this case, "even if the market value of the coat appreciated after the sale-as shown in an appraisal to which defendants objected but purport to rely upon-this does not establish that plaintiff suffered no damages. E.g., Buchanan v. Spitzer Motor City, Inc. (Feb. 7, 1991), Cuyahoga App. Nos. 57893 and 58058, unreported at pp. 5-6. * * * [A]t a minimum, plaintiff suffered damages to the extent she did not receive what was held out to her as a new coat, she paid any additional incidental expenses such as finance charges and sales taxes, and she suffered consequential losses such as expert appraisal fees." The record reflects there was testimony at trial supporting these expenses and, in addition, Arales testified that she suffered emotional distress as a result of appellant's deception.
 {¶ 45} The verdict forms, to which appellant voiced no objection, make it impossible to tell how the jury apportioned its award in this case. With respect to compensatory damages, the verdict forms stated:
 {¶ 46} "If you find against one or more of the Defendants, proceed to the following questions regarding damages. If you find in favor of all the Defendants, advise the bailiff that you have reached a verdict.
 {¶ 47} "4. We the undersigned jurors, being not less than six (6) in number, do hereby award Plaintiff, Margaret Arales, compensatory damages of $__________ for the losses directly and proximately caused by Defendants' wrongful acts or omissions."
 {¶ 48} The jury inserted the number "$15,000" in the blank space. The $15,000 damage award by the jury could consist of compensation for Arales' emotional distress as a result of appellant's deception. On these facts, supported by expert testimony regarding her emotional distress, such an award would be proper. The $15,000 award could also include compensation for incidental appraisal expenses and the decreased value of the coat to Arales when she purchased it. In light of the evidence presented at trial, this breakdown of damages would also be proper.
 {¶ 49} Appellant's third assignment of error is therefore overruled.
 PUNITIVE DAMAGES {¶ 50} In its fourth assignment and sixth assignments of error, appellant asserts that the trial court erred in awarding punitive damages and that, in any event, the punitive damages award was excessive and contrary to the manifest weight of the evidence.
 {¶ 51} It is well established that punitive damages may be awarded in common law fraud actions. Byrley v. Nationwide Life Ins. Co. (1994),94 Ohio App.3d 1, 20. To establish a claim for punitive damages in an action for fraud, the plaintiff must demonstrate, in addition to proving the elements of the tort itself, "that the fraud is aggravated by the existence of malice or ill will, or must demonstrate that the wrongdoing is particularly gross or egregious." Charles R. Combs Trucking, Inc. v.International Harvester Co. (1984), 12 Ohio St.3d 241, paragraph three of the syllabus.
 {¶ 52} We find the jury's award of punitive damages adequately supported by evidence in the record. There was evidence that appellant knew the coat had been sold to a previous purchaser whose monogram was put into the coat and subsequently covered up. There was also evidence that the monogram was purposely concealed in such a way that a prospective purchaser would not discover the alteration prior to purchase. There was also evidence that appellant had engaged in this practice for nearly thirty-five years and that other unsuspecting customers quite likely purchased a coat with someone else's monogram in it. Finally, there was evidence that no one told Arales, a rather naive, first-time fur buyer, about the concealed monogram in the coat in order to induce her to buy a coat. On these facts, the jury could have reasonably concluded that appellant's conduct was particularly gross and egregious, warranting punitive damages.
 {¶ 53} With respect to the amount, punitive damages are awarded for the purpose of punishing the defendant for wrongful conduct and deterring such conduct in the future. See Digital Analog DesignCorp. v. North Supply Co. (1992), 63 Ohio St.3d 657, 660. The amount of punitive damages rests largely within the discretion of the finder of fact. Villella v. Waikem Motors, Inc. (1989), 45 Ohio St.3d 36, 40. An award of punitive damages will generally not be overturned unless it bears no rational relationship or is grossly disproportionate to the amount of compensatory damages awarded such that the award appears to be the result of passion of prejudice.
 {¶ 54} Here, the amount of punitive damages awarded was a little more than three times the amount of compensatory damages awarded to Arales. Although not an insignificant amount, it is not so disproportionate to the amount of compensatory damages as to indicate that the jury acted with passion or prejudice.
 {¶ 55} Appellant's fourth and sixth assignments of error are therefore overruled.
Judgment affirmed.
ANNE L. KILBANE, P.J. AND JAMES J. SWEENEY, J. CONCUR.