BARTHOLET et al., Appellees,

v.

CAROLYN RILEY REALTY, INC. et al., Appellants.

[Cite as *Bartholet v. Carolyn Riley Realty, Inc.* (1998), 131 Ohio App.3d 23.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 18698.

Decided Dec. 30, 1998.

*Michelle Stine Barnoff,* for appellees.

*Ronald M. Martin,* for appellants.

BAIRD, Judge.

Defendants-appellants Carolyn Riley Realty, Inc. and Carolyn Riley (collectively, "Riley") appeal from the judgment rendered by the Summit County Court of Common Pleas awarding $28,250 in damages to plaintiffs-appellees Allen Bartholet and Leanne Bartholet. We reverse.

In August 1992, the Bartholets purchased a residence in Akron, Ohio. The home had been listed by Riley. The Bartholets sued Riley for, *inter alia,* fraud in misrepresenting or concealing the condition of the basement. Riley, in turn, sued Sheila Eaton, a former agent for Riley, and Robert and Mary Zwisler, the

owners of the home, alleging that these third-party defendants were the actual and proximate cause of any damages suffered by the Bartholets. The third-party defendants counterclaimed against Riley. By the time of trial, all causes of action had been settled except for the allegations of the Bartholets against Riley. After a bench trial, the trial court found Riley liable for fraud and awarded compensatory damages of $28,250.

Riley appeals only the size of the damage award. Riley's sole assignment of error is as follows:

"In a homeowners action for compensatory damages for a basement water problem, the trial court reversibly erred in awarding $28,000 in 'cost of repair' damages, when the problem had already been fixed at no cost to the homeowners, and where the awarded damages exceeded the $3,000 diminution in market value attributable to the water problem."

In analyzing the damages issue, the trial court cited the settled rule for temporary and reparable injury to real property:

"If restoration can be made, the measure of damages is the reasonable cost of restoration, plus the reasonable value of the loss of the use of the property between the time of the injury and the restoration, unless such cost of restoration exceeds the difference in the market value of the property as a whole before and after the injury, in which case the difference in the market value before and after the injury becomes the measure." *Ohio Collieries Co. v. Cocke* (1923), 107 Ohio St. 238, 140 N.E. 356, paragraph five of the syllabus.

Having noted that Leanne Bartholet testified that she and her husband desire to live in the house and not to sell the house, the trial court relied upon the following modification of the *Ohio Collieries Co.* rule advanced by the First District Court of Appeals:

"In an action for temporary damages *to a building that the owner does not plan to sell but intends to use as his home in accordance with his personal tastes and wishes, when restoration is practical and reasonable,* the owner is entitled to be compensated fairly and reasonably for his loss even though the market value of the building may not have been substantially decreased by the tort. *The owner may recover as damages the fair cost of restoring his home to a reasonable approximation of its former condition, and his failure to prove the difference between the value of the whole property just before the damage was done and immediately thereafter is not fatal to the owner's lawsuit.* The diminution in overall value is relevant to the issue of damages, and evidence about such diminution, whether presented by the plaintiff or the defendant, may be taken into consideration in assessing the reasonableness of damages." (Emphasis added.) *Adcock v. Rollins Protective Serv. Co.* (1981), 1 Ohio App.3d 160, 161, 1 OBR 471, 440 N.E.2d 548, 550.

In doing so, the trial court determined damages based solely on the costs of repairing the flooding problem without considering the diminution in value of the home that resulted from the flooding problem.

Professional excavator Donald McElravy opined that a "French drain" or trench system, built around the perimeter of the house, would remedy the water problem in the basement. McElravy further opined that it would cost $25,000 to install such a system. Dr. Youram Echstein, a licensed hydrogeologist and a professor of geology, stated that the plan outlined in a repair estimate prepared by McElravy's excavation firm would remedy the water problem. Echstein also stated that, prior to the installation of such a system, computations and tests costing $3,000 would have to be conducted.

The trial court entered judgment for the Bartholets against Riley for $28,250, by adopting the experts' figures and adding to them $250 to reflect the deductible paid by the Bartholets to the carrier of their homeowners' insurance for damage caused by two flooding accidents.

Riley argues that the trial court erred in its application of *Adcock* to this case. We agree. Without adopting *Adcock*, we note that the trial court's application of it is inconsistent with later interpretations of *Adcock*, including those of the authoring court and of this court.

In *Adcock*, the defendants moved for a directed verdict both at the close of the plaintiffs' case and at the close of all the evidence because the plaintiffs had not presented any evidence of diminution in value of the real property. The First District Court of Appeals reversed the directed verdict that was granted, in response, by the trial court. As it relates to plaintiffs' presentation of evidence of diminution in value, *Adcock* merely stands for the proposition that the plaintiffs can survive a motion for directed verdict even without presenting evidence of diminution in value. See *Charlson v. Cincinnati* (Sept. 10, 1986), Hamilton App. No. C–850702, unreported, 1986 WL 9780. That proposition is inapplicable here, where the plaintiffs did present evidence of diminution of value but the trial court chose to limit its consideration of damages to the cost of repair.

*Adcock* did not eliminate consideration of the element of diminution in value when determining damages to real property intended by the injured party to be used as a home. To the contrary, the court noted that "[t]he diminution in overall value *is* relevant to the issue of damages." (Emphasis added.) *Adcock*, 1 Ohio App.3d at 161, 440 N.E.2d 548. In later cases, the First District Court of Appeals interpreted its *Adcock* decision to mean that *Collieries* may not be arbitrarily or exactly applied without considering whether diminution in value would adequately compensate the plaintiff for the injuries suffered. See *Cincinnati Riverfront Coliseum, Inc. v. Clark Eng. Co.* (Oct. 30, 1985), Hamilton App. Nos. C–840639 and C–840640, unreported, 1985 WL 11516. The *Adcock* court did

not substitute one arbitrary or exact formula for another. The *Adcock* modification, where adopted, merely permits a softening of the *Collieries* rule in cases where restoration does not require "grossly disproportionate expenditures" and where, for noneconomic reasons personal to the plaintiffs, restoration of the property is the only option that will make them whole. *Denoyer v. Lamb* (1984), 22 Ohio App.3d 136, 138–140, 490 N.E.2d 615. These decisions are consistent with this court's previous examination of *Adcock*, in which we noted that *Adcock* means that the *Collieries* rule "is not to be inflexibly applied to every case without regard to whether the party alleging injury is fully compensated." *Hague v. Saltsman* (May 10, 1989), Summit App. No. 13883, unreported, at 6, 1989 WL 50691.[1]

We decline to adopt the trial court's interpretation of *Adcock* in this district. As a matter of law, diminution in the value of real property is a limiting factor on the damage award for the injury to that property. See *Ohio Collieries Co.*, 107 Ohio St. 238, 140 N.E. 356, at paragraph five of the syllabus. There may be some flexibility in applying that limitation when the property has intangible value in its original state for reasons of personal taste to the injured party. See *Northwestern Ohio Natural Gas Co. v. First Congregational Church of Toledo* (1933), 126 Ohio St. 140, 151–52, 184 N.E. 512, 517 (noting that some properties may not have a market value, as the term is commonly understood, and that to limit recovery based on diminution in market value may not adequately compensate the owner for the injury to the property). Even when an award somewhat higher than the diminution in value of the property might be appropriate, the restoration costs awarded must not be grossly disproportionate expenditures. See *Denoyer v. Lamb*, 22 Ohio App.3d at 138–140, 490 N.E.2d 615. That determination cannot be made without considering the value of the property before and after the injury. See *Hague*, Summit App. No. 13883, unreported, at 8, 1989 WL 50691.

Because the trial court awarded restoration costs as damages without considering diminution in value of the property, Riley's assignment of error is sustained. The judgment of the trial court is reversed, and this cause is remanded to the trial court for the redetermination of damages in accordance with this opinion.

*Judgment reversed*
*and cause remanded.*

---

1. In *Hague* we determined that, in any event, *Adcock* did not apply because the property in question was commercial property. *Id.* at 7, 1989 WL 50691. This court explicitly declined to adopt *Adcock* in *Hague*, noting that *Adcock* was persuasive but not controlling. *Id.* We do not adopt it now, noting only that, even if it were controlling, it was misapplied by the trial court.

DICKINSON, J., concurs.

CARR, J., dissents.

CARR, J., dissenting.

The trial court, the litigants, and the majority of this court have all engaged in an extensive and rather impressive debate over the effect of *Adcock* on *Ohio Collieries*. Unfortunately, the entire debate was unnecessary.

Because the harm caused herein and the damages that flowed therefrom are different in kind from those suffered in *Ohio Collieries*, the rule for damages set forth in *Ohio Collieries* does not apply. *Campbell v. Senich* (Jan. 23, 1980), Summit App. No. 9398, unreported (noting that damages resulting from fraud are governed by a different rule from damages resulting from negligence). *Ohio Collieries* and virtually all of its progeny, including *Adcock*, involved situations where the plaintiff's real property was directly harmed or injured by the defendant's tortious conduct. For instance, in *Ohio Collieries*, the plaintiff sued the defendant for improperly removing coal from under her property, causing the earth to crack, and thereby damaging her house and barn. In the instant case, however, there is no allegation that the appellee did anything to cause appellants' basement to flood. Instead, the only harm caused by appellee's fraud is that appellants lost the benefit of their bargain. Appellants bargained for, and assumed they had purchased, a house with a dry basement. However, due to appellees' fraud, appellants did not get that for which they bargained. This case is therefore distinguishable from *Ohio Collieries* and *Adcock*.

The correct rule for damages in cases of fraud was set forth in *Brewer v. Brothers* (1992), 82 Ohio App.3d 148, 154, 611 N.E.2d 492, 495–496, citing *Molnar v. Beriswell* (1930), 122 Ohio St. 348, 171 N.E. 593, paragraph one of the syllabus:

"Where there is fraud inducing the purchase or exchange of real estate, Ohio courts have held that the proper measure of damages is the difference between the value of the property as it was represented to be and its actual value at the time of purchase or exchange. This is known as the 'benefit-of-the-bargain' rule." See, also, *Noble v. Mandalin* (1995), 104 Ohio App.3d 11, 14, 660 N.E.2d 1231, 1233; *Ward v. Laminsky* (Feb. 12, 1998), Cuyahoga App. No. 72128, unreported, 1998 WL 57092; *Wolf v. Stein* (Aug. 29, 1994), Butler App. No. CA93–08–154, unreported, 1994 WL 462202; *Hampton v. Dieter* (Feb. 24, 1994), Cuyahoga App. No. 64601, unreported, 1994 WL 57734; *Lyons v. Orange* (May 4, 1982), Montgomery App. No. 7566, unreported; *Burgio v. Looks* (Sept. 19, 1980), Erie App. No. E–79–48, unreported.

This court in particular has repeatedly applied the benefit-of-the-bargain rule to cases involving fraud in the purchase of real estate. *Starinki v. Pace* (1987), 41 Ohio App.3d 200, 202, 535 N.E.2d 328, 331; *Petta v. Clarke* (Jan. 15, 1997), Lorain App. No. 96CA006327, unreported, 1997 WL 33295; *Dziedzicki v. Bonafine* (Dec. 16, 1992), Summit App. No. 15597, unreported, 1992 WL 380599 (majority opinion authored by current Justice Cook); *Campbell, supra.* Thus, the benefit-of-the-bargain rule should govern the assessment of damages in this case.

As noted above, under the benefit-of-the-bargain rule, damages are measured solely by the difference between the value of the property as it was represented to be and its actual value at the time of purchase or exchange. However, "[c]ourts have also held that the cost of repair or replacement is a fair representation of damages under the benefit of the bargain rule and is a proper method for measuring damages." *Brewer, supra,* 82 Ohio App.3d at 154, 611 N.E.2d at 496. See, also, *Noble; Ward; Wolf; Hampton; Lyons; Burgio, supra.* This court in particular has previously held that repair costs are a fair representation of damages in cases of fraud. *Petta; Dziedzicki, supra.*

In this case, although the trial court incorrectly relied on *Adcock,* it properly used the cost of repair to measure damages. Because the trial court arrived at the correct result under the benefit-of-the-bargain rule, we are precluded from reversing the judgment simply because the trial court gave the wrong reasons. *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 92, 637 N.E.2d 306. Thus, I would affirm.