DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} During July 2000, plaintiffs Michael and Jennifer Martin bought a home in Uniontown. Defendant Design Construction Services Inc. had built the home two years earlier for the people from whom the Martins purchased it. In May 2005, the Martins brought this action against Design Construction, alleging that it had negligently built the foundation for the home's attached garage, which led to cracked and deteriorating foundation walls. The case was tried to a jury, which returned a verdict in favor of the Martins for $11,770, the amount they had spent to repair the foundation. Design Construction moved for judgment *Page 2 
notwithstanding the verdict, arguing that the Martins were not entitled to recover the amount they spent to repair the foundation because they had failed to prove the difference between the value of their home before and after the damage to the foundation. The trial court denied Design Construction's motion, and Design Construction appealed. This Court reverses the trial court's judgment because the Martins failed to prove the diminution of value of their home as a result of Design Construction's alleged negligence and such proof is a prerequisite to recovery of the cost of repairs to real estate.
 I. {¶ 2} During 1998, Design Construction built a house at 2251 Graybill Road, Uniontown, Ohio, for Charity Davis and Matthew Herr. The house has a concrete block foundation. Design Construction applied a coat of mortar to the outside of the concrete blocks where they are above grade.
 {¶ 3} Because of the topography of the lot, the grade of the yard at the rear of the garage is approximately three feet lower than the grade of the yard at the front of the garage. This means that approximately three feet of the garage foundation is above the grade of the surrounding yard at the rear of the exterior side of the garage and across the back of the garage. It also means that, during construction, Design Construction had to use dirt to backfill inside the garage foundation in order to have a level surface upon which to pour the concrete garage floor. As Design Construction was using a bulldozer to backfill the foundation, *Page 3 
the bulldozer operator got too close to the exterior side wall and the back wall, and the bulldozer's weight on the dirt inside the foundation caused those walls to flex outward. Don Shultz, Design Construction's president, testified that the damage to the foundation was not substantial enough to require major repairs. Instead, Design Construction dug the backfill out by hand to relieve the pressure, straightened the walls, and returned the backfill to the inside of the foundation. It also repaired cracks that had developed in the mortar on the outside of the foundation walls.
 {¶ 4} A year later, Design Construction had the concrete blocks in the areas at which the walls had flexed filled with grout. Mr. Shultz testified that Design Construction had done so because it "didn't want to take any more chances with it" and doing so "would make those two solid concrete walls and they would never go anywhere or have any concerns with that."
 {¶ 5} The Martins bought the home from Ms. Davis and Mr. Herr during July 2000. In a Residential Property Disclosure Form that Ms. Davis and Mr. Herr completed, they indicated that a crack in the back wall of the garage had been fixed during May 1999. An inspector hired by the Martins to examine the house before closing indicated that he had discovered some minor cracking and suggested monitoring:
 Minor stress cracking evident. It appeared typical for the age and type of construction. There was not visible evidence of significant structural movement at this time. *Page 4 
 The disclosure stated that a crack at the rear of the garage has been patched. Because of the design of the garage, where the floor is higher than the rear yard, further movement could continue slowly over time. I suggest monitoring. Some reinforcing may need added if movement continues.
 {¶ 6} Mr. Martin acknowledged that there were cracks in the mortar on the outside of the above grade concrete blocks at the time the Martins moved into the house. He testified, however, that he assumed they were just in the mortar and not in the concrete blocks under the mortar.
 {¶ 7} During the summer of 2003, Mr. Martin painted the outside of the garage foundation. During May 2004, he noticed that the cracks in the mortar were getting wider and concluded that it might be a problem, although he testified that he believed it was a cosmetic problem. He decided to attempt to repair the cracks with mortar cement. He used an angle grinder to widen the cracks as a first step in attempting to fill them. As he did so, the faces of some of the concrete blocks under the mortar fell off. He further testified that he discovered a powdery material inside the concrete blocks. At that point, Mr. Martin contacted several contractors to have them look at the problem, and they suggested that he contact the builder, which he did.
 {¶ 8} Representatives of Design Construction examined the Martins' garage and denied responsibility for the problem. They acknowledged that, during construction, the bulldozer had caused the walls to flex. They suggested, however, that the problem with the concrete blocks had been caused by Mr. Martin painting *Page 5 
the foundation and his use of an angle grinder on the cracks in the mortar. They further told the Martins that, despite the cracks and crumbling blocks, they did not feel that "there [was] a concern for structural failure."
 {¶ 9} The Martins hired a company named Master Masonry to repair the garage foundation. David Moody, the president of Master Masonry testified that, when Master Masonry excavated around the foundation, it discovered that the footers were not below the frost line as they should have been. He also testified that the grout with which the concrete blocks were filled had never cured. He suggested that the grout mixture had not contained enough concrete. Although he acknowledged that he does not recommend painting a concrete block foundation because doing so holds moisture inside the concrete blocks, he testified that he did not believe that the problem with the garage foundation was caused by Mr. Martin having painted it. He noted that the moisture in the foundation had to have come from somewhere. He testified that he believed the concrete blocks crumbled because the grout inside them had never cured.
 {¶ 10} Master Masonry replaced the side and back walls of the garage foundation. It also placed insulation around the footers to protect them from frost. Master Masonry charged the Martins $11,470 for its work. In addition, the Martins paid a structural engineer $300 for work he did regarding repairs to the garage foundation. *Page 6 
 {¶ 11} Mr. Martin testified that the Martins paid $167,000 for the home in 2000. He further testified that he assumed that the fair market value of the home at the time of trial, if there had not been a problem with the garage foundation, would have been "somewhere around $180,000." Finally, he testified that he believed disclosing to a potential buyer that the foundation had been repaired would reduce by ten percent what that potential buyer would be willing to pay for the home:
 Q. What is the value that is the harm that you've suffered by having to do these repairs?
 . . . .
 A Well, in my opinion, I would think that, like I said, if I was going to purchase the house and if the person, let's say, had one without repairs and one with repairs, I would assume maybe ten percent would be a reasonable number, which would be about 18,000 that someone would want to drop the price for them to consider it when they could go to an identical house without repairs. The Martins did not present any evidence tending to prove how much the fair market value of their home would have been reduced by the garage foundation problem if they had not repaired that problem.
 {¶ 12} In its instructions, the trial court provided the jury the definition of "fair market value." It then instructed the jury that, if it found for the Martins, they could recover the reasonable cost of necessary repairs, so long as that amount did not exceed the diminution in value of their home "immediately before and after the damage": *Page 7 
 If the damage to the property is temporary and such that the property can be restored to its original condition, then the owner may recover the reasonable costs of these necessary repairs. If, however, these repairs — repair costs exceed the difference in the fair market value of the property immediately before and after the damage, then this difference in value is all that the owner may recover.
It further instructed the jury, over Design Construction's objection, that if a landowner holds the property for personal use, he can recover the cost of restoration, so long as that amount is not "grossly disproportionate to the value of the property":
 A land owner may receive restoration costs when the owner holds the property for personal use. There are reasons personal — they are reasons and personal to the owner for seeking restoration. The restoration damages are not grossly disproportionate to the value of the property.
 {¶ 13} The jury returned a general verdict for the Martins for $11,770. In response to an interrogatory, the jury found that Design Construction had been negligent by operating a bulldozer too close to the garage foundation walls during construction. In response to another interrogatory, it found that the Martins had failed to "prove by a preponderance of the evidence any diminution in the fair market value of their real property based on the alleged defects in the construction of their home."
 {¶ 14} Design Construction moved for judgment notwithstanding the verdict, arguing that, inasmuch as the jury found that the Martins had failed to prove the difference in the fair market value of their home immediately before and after the damage to the garage foundation, they were not entitled to recover the *Page 8 
cost of the repairs to the foundation. The trial court denied its motion, holding in part that the Martins had satisfied their burden by presenting evidence regarding diminution in value even if the jury did not believe that evidence:
 The Court first notes that Plaintiffs did in fact present evidence of diminution of value. The fact that the jury found that Plaintiffs did not prove the amount by a preponderance of the evidence does not change the fact that evidence was presented. Secondly, the Court finds that pursuant to Bartholet that award of $11,770 permits the Plaintiffs to be fully compensated without the award being disproportionate to the value of the home.
Design Construction appealed to this Court and has assigned three errors.
 II. A. {¶ 15} Design Construction's first assignment of error is that the trial court incorrectly awarded the Martins the cost of repairing the garage foundation. According to Design Construction, the trial court should have granted its motion for judgment notwithstanding the verdict based on the jury's finding that the Martins failed to prove any diminution in value to their home caused by the damage to the foundation.
 {¶ 16} An appellate court's review of the denial of a motion for judgment notwithstanding the verdict is identical to its review of the denial of a motion for directed verdict at the close of all the evidence. Levey Co. v. Oravecz, 9th Dist. No. 21768, 2004-Ohio-3418, at ¶ 6. Consideration of either motion requires a trial court to determine whether the nonmoving party has presented sufficient evidence *Page 9 
to meet its burden of proof. See Id. An appellate court's review of the denial of either motion, therefore, is de novo. Id.
 {¶ 17} In Ohio Collieries Co. v. Cocke, 107 Ohio St. 238 (1923), the Ohio Supreme Court held that an owner of real property is entitled to recover the cost of repairs to that property only so long as that amount does not exceed the diminution in value of the property caused by the injury:
 If restoration can be made, the measure of damages is the reasonable cost of restoration, plus the reasonable value of the loss of the use of the property between the time of the injury and the restoration, unless such cost of restoration exceeds the difference in the market value of the property as a whole before and after the injury, in which case the difference in the market value before and after the injury becomes the measure.
Id. at syllabus. In South Shore Cable Const. Inc. v. Grafton CableCommunications Inc., 9th Dist. No. 03CA008359, 2004-Ohio-6077, at ¶ 29, this Court held that, if a party seeking to recover cost of repairs fails to present evidence of diminution in value, "the trial court may properly dismiss that party's claim." (Citing Smith v. Coldwell BankerHunter Realty, 9th Dist. No. 20908, 2002-Ohio-4866, at ¶ 18.)
 {¶ 18} In Adcock v. Rollins Protective Services Co.,1 Ohio App. 3d 160 (1981), the First District Court of Appeals, while acknowledging that Ohio Collieries set forth the general rule for recovery of damages to real estate, adopted an exception to that rule for damages to residences that homeowners do not immediately plan to sell: *Page 10 
 In an action for temporary damages to a building that the owner does not plan to sell but intends to use as his home in accordance with his personal tastes and wishes, when restoration is practical and reasonable, the owner is entitled to be compensated fairly and reasonably for his loss even though the market value of the building may not have been substantially decreased by the tort. The owner may recover as damages the fair cost of restoring his home to a reasonable approximation of its former condition, and his failure to prove the difference between the value of the whole property just before the damage was done and immediately thereafter is not fatal to the owner's lawsuit.
Id. at 161. The Martins have urged this Court to follow Adcock and hold that proof of diminution of value was not a prerequisite to recovery of their cost of repairs in this case.
 {¶ 19} This Court has previously refused to follow Adcock:
 We decline to adopt the trial court's interpretation of Adcock in this district. As a matter of law, diminution in the value of real property is a limiting factor on the damage award for the injury to the property.
Bartholet v. Carolyn Riley Realty Inc., 131 Ohio App. 3d 23, 27 (1998). The Martins have not convinced it to do so in this case.
 {¶ 20} In Bartholet, this Court recognized that some flexibility in applying the Ohio Collieries rule might be appropriate in cases in which "the property has intangible value in its original state for reasons of personal taste to the injured party." Bartholet, 131 Ohio App. 3d at 27. Even in such cases, however, the property owner would still have to prove the diminution in value:
 Even when an award somewhat higher than the diminution in value of the property might be appropriate, the restoration costs awarded must not be grossly disproportionate expenditures. . . . That *Page 11 
determination cannot be made without considering the value of the property before and after the injury.
Id.
 {¶ 21} The Martins have further argued that they did present evidence of diminution of value in this case. Mr. Martin testified that, even after the repair to the garage foundation, he believed the fair market value of his home had been reduced $18,000 as a result of having a repaired foundation. The Court notes that Mr. Martin was not asked to opine on the difference in the fair market value immediately before and after the damage to the foundation. Presumably, if he had been, he would have testified to an even greater diminution in value.
 {¶ 22} The Court will assume without deciding that Mr. Martin was qualified to testify regarding the diminution in value to his home. The jury, however, did not believe his testimony, specifically finding that the Martins had not proven "any diminution in the fair market value of their real property based on the alleged defects in the construction of their home." Contrary to the trial court's holding in its ruling on Design Construction's motion for judgment notwithstanding the verdict, the Martins' burden was not just to introduce evidence of diminution in value; it was to prove diminution in value:
 The party seeking restoration cost bears the burden of proving that it would not be "grossly disproportionate" to diminution in value. *Page 12 
South Shore Cable Const. Inc. v. Grafton Cable Communications Inc., 9th Dist. No. 03CA008359, 2004-Ohio-6077, at ¶ 29 (quoting Bartholet v.Carolyn Riley Realty Inc., 9th Dist. No. 20458, 2001 WL 866281, at *1 (Aug. 1, 2001)).
 {¶ 23} The Martins failed to prove diminution in value to their home caused by Design Construction's negligence. Accordingly, they were not entitled to recover the cost of their repairs. Design Construction's first assignment of error is sustained.
 B. {¶ 24} Design Construction's second and third assignments of error are that the trial court incorrectly instructed the jury regarding "an exception to the general rule for damages to real property" and incorrectly denied it summary judgment based on the statute of limitations. In light of this Court's ruling on its first assignment of error, these assignments of error are moot and are overruled on that basis.
 III. {¶ 25} Design Construction's first assignment of error is sustained and its second and third assignments of error are overruled. The judgment of the trial court is reversed.
 Judgment reversed. *Page 13 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellee.
WHITMORE, P. J. CONCURS