DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant/Appellants Steven Sokol, ASJ Sokol Co., and Sokol Development (collectively "Sokol") appeal the judgment in favor of Appellee David Zeck ("Zeck") entered by the Medina County Court of Common Pleas on claims for breach of contract, unjust enrichment and conversion. Sokol also appeals the trial court's award of prejudgment interest. We affirm.
 {¶ 2} Zeck is a professional surveyor licensed by the Ohio State Board of Professional Engineers and Surveyors. Zeck works as a full time surveyor for an engineering company in Independence, Ohio and also does surveying work as independent contractor for other companies. *Page 2 
 {¶ 3} Steven Sokol is a professional engineer licensed by the Ohio State Board of Professional Engineers and Surveyors. He is not a licensed surveyor. ASJ Sokol Company is civil engineering company. Sokol Development, LLC is a land holding company for raw undeveloped land. Its corporate offices are in the basement of Steven Sokol's home in Brunswick, Ohio.
 {¶ 4} In 1998, Zeck and Sokol entered into a business relationship whereby Zeck would do survey work for Sokol at the rate of $30.00 per hour and would be paid $200 per hour to review, approve, and sign documents prepared by an engineer based on Zeck's surveying data ("the Agreement"). Zeck would then stamp the documents with his licensed surveyor stamp. The parties did not put this Agreement in writing. Over the course of time, Sokol did not pay Zeck for work performed and used Zeck's signature and professional seal to stamp documents that Zeck never reviewed, approved and/or did the field survey work to produce. Zeck asserts that Sokol used Zeck's signature and seal on 1,229 documents without his permission. Sokol admits that he used Zeck's signature and seal, but asserts that Zeck knew that Sokol had Zeck's seal in his computer system and never objected or questioned Sokol about it.
 {¶ 5} In January of 2006, Zeck filed suit against Sokol for breach of contract, conversion and unjust enrichment. The matter was tried to a jury on January 22, 2007. The jury found in favor of Zeck on all claims and awarded him $150,000 for breach of contract, $50,000 for unjust enrichment, and $100,000 for *Page 3 
conversion. The trial court entered judgment on February 22, 2007 ("Judgment Entry").
 {¶ 6} On February 8, 2007, Zeck filed a motion for prejudgment interest. The trial court held a hearing on March 8, 2007. On March 20, 2007, the trial court awarded prejudgment interest to Zeck on the contract and tort verdicts and denied Sokol's motion for judgment notwithstanding the verdict ("Prejudgment Interest Entry").
 {¶ 7} Sokol timely appealed the Judgment Entry and Prejudgment Interest Entry and raises two assignments of error.
 Assignment of Error No. I "The jury's verdict and trial court's judgment with respect to the breach of contract and unjust enrichment claims were against the manifest weight of the evidence, and the trial court further erred in denying [Sokol's] motion for judgment notwithstanding the verdict, where: (1) [Zeck] did not actually perform the surveyor work in the field and/or subsequent review of the documents in question produced by [Sokol], who admittedly performed the work themselves and then affixed [Zeck's] seal and signature to those documents; and (2) [Zeck] admitted that there was no agreement whatsoever between the parties concerning work on topographical maps."
 {¶ 8} Sokol asserts that the jury verdict and Judgment Entry finding him liable for breach of contract and unjust enrichment are against the manifest weight of the evidence and that the trial court erred in denying his motion for judgment notwithstanding the verdict related to these two claims. Sokol asserts that there was no breach of contract because by the date of trial, Zeck had been paid for all *Page 4 
services rendered. Sokol also maintains that there was no contract in place for the work that Zeck did not do, i.e., the drawings stamped by Sokol with Zeck's signature and seal without Zeck's permission, and thus, Sokol could not be liable for breach of contract related to any forged documents.
 {¶ 9} Regarding the unjust enrichment claim, Sokol asserts that: (1) Zeck was aware of Sokol's use of his signature and seal; (2) Zeck did not do any work for which Sokol was purportedly unjustly enriched; and (3) Zeck cannot recover in quasi-contract where an express contract exists.
 {¶ 10} Zeck asserts that Sokol's unauthorized use of Zeck's seal and signature breached the Agreement and that the forged documents were not covered by the Agreement, thus forming the basis for his unjust enrichment claim.
 {¶ 11} In The Huntington Natl. Bank v. Chappell, 9th Dist. No. 06CA008979, 2007-Ohio-4344, we discussed our review of manifest weight challenges in a civil context and stated:
 "The Ohio Supreme Court recently reiterated the distinction between a manifest weight of the evidence analysis within a civil context, as opposed to a criminal context. In State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, the high court reiterated the distinction between the civil and criminal manifest weight of the evidence standards of review. The Wilson court stated that the civil manifest weight of the evidence standard was enunciated in C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus, which held that `[judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' Wilson at ¶ 24. Further, `when reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct. *Page 5 
 `Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80-81. This presumption arises because the trial judge had an opportunity `to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' Id. at 80. `A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. Id. at 81.'" Huntington at ¶ 4.
 {¶ 12} "An appellate court's review of the denial of a motion for judgment notwithstanding the verdict is identical to its review of the denial of a motion for directed verdict at the close of all the evidence. Consideration of either motion requires a trial court to determine whether the nonmoving party has presented sufficient evidence to meet its burden of proof. An appellate court's review of the denial of either motion, therefore, is de novo." Martin v. Design Constr.Servs., Inc., 9th Dist. No. 23422, 2007-Ohio-4805, at ¶ 16, citingLevey Co. v. Oravecz, 9th Dist. No. 21768, 2004-Ohio-3418, at ¶ 6.
 {¶ 13} Initially, we note that, under the facts of this case, Sokol can be liable for both breach of contract and unjust enrichment in the same proceeding. The doctrine of unjust enrichment is "inapplicable if an express agreement existed concerning the services for which compensation is sought [and] the parameters of the agreement limit the parties' recovery, in the absence of bad faith, fraud or illegality."Pawlus v. Bartrug (1996), 109 Ohio App.3d 796, 800, citing Aultman Hosp.Assn. v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51, 55. *Page 6 
 {¶ 14} Here, because there was not an express agreement concerning "the services for which compensation [was] sought[,]" the "parameters of the agreement" do not limit the parties' recovery. Pawlus,109 Ohio App.3d at 800, citing Aultman Hosp. Assn., 46 Ohio St.3d at 55. There was no express agreement governing Sokol's unauthorized use of Zeck's signature and seal where Zeck did not do the survey work and document review.
 {¶ 15} However, there was an express agreement related to services that Zeck actually performed. Sokol admitted to breaching the agreement by failing to pay Zeck for work that Zeck had done pursuant to that contract. Sokol testified as follows:
 "Q. But you admit that there are still monies owed to my client based on work he performed for you pursuant to your oral agreement, correct?
 "A. Yeah.
 * * *
 "Q. Did Dave do the work?
 "A. Yes.
 "Q. And you did not pay him?
 "A. That's correct.
 "Q. And the terms of the oral contract were, do work and I pay you?
 "A. That's correct." *Page 7 
 {¶ 16} Accordingly, there was evidence at trial that Sokol breached the contract and was unjustly enriched by separate conduct (his unauthorized use of his signature and seal). Zeck's claims for unjust enrichment and breach of contract are both viable.
 {¶ 17} After review of the record, we hold that the verdict is supported by competent credible evidence going to all of the elements of both claims.
 {¶ 18} "Courts generally determine the existence of a contract as a matter of law." Applegate v. Northwest Title Co., 10th Dist. No. 03AP-855, 2004-Ohio-1465, at ¶ 9, citing State ex rel. Horvath v. StateTeachers Retirement Bd. (Apr. 29, 1997), 10th Dist. No. 96APE08-983, andLatina v. Woodpath Dev. Co. (1991), 57 Ohio St.3d 212, 214. "Under a breach of contract claim, a plaintiff must demonstrate by a preponderance of the evidence that (1) a contract existed, (2) the plaintiff fulfilled his obligations, (3) the defendant failed to fulfill his obligations, and (4) damages resulted from this failure. That is, for the plaintiff to place the defendant in breach, the plaintiff must tender performance of his obligation and demand performance by the defendant of the reciprocal obligation." Ligman v. Realty OneCorp., 9th Dist. No. 23051, 2006-Ohio-5061, at ¶ 5, citing Lawrence v.Lorain Cty. Community College (1998), 127 Ohio App.3d 546, 548-49 and Restatement of the Law 2d, Contracts (1981), Section 238.
 {¶ 19} "In order to bring a case for unjust enrichment, Appellant must show (1) that he conferred a benefit on Appellee; (2) that Appellee knew of the benefit; *Page 8 
(3) and that Appellee retained the benefit given under circumstances where it would be unjust for him to retain it without payment."Coyne v. Hodge Const, Inc., 9th Dist. No. 03CA0061-M, 2004-Ohio-727, at ¶ 5. See, also, Hambleton v. R.G. Barry Corp. (1984), 12 Ohio St.3d 179,183; Apostolos Group, Inc. v. Josephson, 9th Dist. No. 20733, 2002-Ohio-753, at *1. "Not only must Appellant suffer a loss, but Appellee must have received a gain." Coyne at ¶ 5.
 {¶ 20} Zeck testified that he and Sokol entered into the Agreement and that both the field work and document review portions of the contract were required because he could not review and approve finished survey drawings unless he was sure the measurements were accurate, i.e., unless he had also done the field survey work. Zeck testified that there was not an agreement allowing Sokol to use his signature and stamp on documents that Zeck did not review. Zeck testified that Sokol admitted to using Zeck's signature and stamp, without permission, on at least 15 mortgage location surveys, 25 ALTA surveys, and 25 as-built surveys. Zeck further explained that his investigation revealed that Sokol signed his name and used his stamp on over 1,000 documents. Once Zeck realized the scope of Sokol's conduct, Zeck notified the state board. Zeck explained that Sokol's unauthorized use of his signature/stamp allowed Sokol to save money because he did not have to hire a surveyor.
 {¶ 21} Zeck indicated that Sokol had a computer-generated copy of his seal on Sokol's computer that Sokol would print on documents after Zeck reviewed *Page 9 
them. On other documents, his signature from a previous document was taped on to a new document indicating his review of said document where he had not done such a review. Zeck testified that he never had any reason to believe that Sokol would use his stamp and signature in violation of Ohio's surveying/engineering licensing laws. Zeck testified that he was unaware that Sokol was using his signature and stamp on other documents and would never risk his license and livelihood by allowing such conduct.
 {¶ 22} Zeck finally testified that he obtains surveying work based on reputation. Zeck testified that after he learned of the forgeries, he had a few phone calls asking why there were two different versions of his signature on documents. Zeck indicated that Sokol's conduct was a popular topic in the industry and such talk harmed his reputation. Moreover, any issues related to the forged documents would affect his reputation and business and could potentially subject him to future liability. Zeck finally testified that Sokol continued to use his stamp and signature without authorization after he filed the instant lawsuit and that he was concerned that Sokol will continue his conduct.
 {¶ 23} Sokol testified, via deposition read into the record, that he is the owner and president of an engineering company and land holding company, both of which were named defendants. Sokol indicated that he is not a licensed surveyor and cannot perform survey work. *Page 10 
 {¶ 24} Sokol testified that when a boundary survey was needed, he would engage a surveyor who would do the field work and then Sokol or his employee would prepare drawings based on the surveyor's measurements. Sokol acknowledged that he is required by Ohio law to have a surveyor measure, review and approve topographical maps, consolidations, lot splits, and boundary surveys.
 {¶ 25} Sokol would approve the final drawings after which the surveyor would review and approve them. Some drawings, including topographical maps, were required to have both the engineer and surveyor's seal before they could be filed with any governmental agency.
 {¶ 26} Sokol acknowledged the Agreement and indicated that he never had any problems with Zeck's work product. As noted above, Sokol admitted at trial via depositions read into the record at trial, that he had not paid Zeck in full per the oral contract for work Zeck had actually performed.
 {¶ 27} Sokol admitted that he filed documents with Zeck's signature and stamp where Zeck had not done the field work and/or reviewed the documents. Sokol admitted that it was he that placed Zeck's signature and stamp on all drawings and that he did so on every drawing regardless of whether Zeck actually did the work for a period of eight years. In some cases, Sokol acknowledged using a cut and paste of Zeck's signature on documents.
 {¶ 28} Sokol asserted that he thought he was permitted to do the survey work himself because Zeck gave him permission to do so, although he *Page 11 
acknowledged that Ohio law does not give a surveyor permission to certify someone as a professional surveyor. Sokol indicated that he created Zeck's stamp himself by modifying another surveyor's stamp that he already had on his computer. Sokol maintained that although Zeck never gave him his physical or a computer-generated stamp, Zeck was aware that he had altered another surveyor's computer-generated stamp to include Zeck's information. Such permission was implied, Sokol explained, by the fact that he and Zeck worked together on a project. Sokol maintained that Zeck had to have known about Sokol's conduct where such a long time passed between Zeck's field work and the production of drawings. However, Sokol acknowledged that Zeck was not required, as a condition of employment, to give him permission to use his stamp and signature and that he never asked or told Zeck he was going to do so. Sokol also indicated that he was "not sure exactly what Mr. Zeck knew and what he didn't know." Sokol went on to acknowledge that Zeck never specifically gave him permission to use his stamp on documents.
 {¶ 29} Sokol explained that he used Zeck's stamp and signature for his own benefit because he needed a surveyor stamp and signature on documents. Sokol stated that using Zeck's signature and stamp were a "benefit as part of just the business process" and a benefit allowing him to continue "to stay in business." Sokol also admitted that he benefited because he did not have pay Zeck $200 to review, sign and stamp every drawing. *Page 12 
 {¶ 30} Sokol acknowledged that a property owner and the surveyor would be affected by any drawing that had been filed with the county. Sokol agreed that a filed drawing would affect "the surveyor's name in the community if that drawing is not done to a standard that he would like[.]" Sokol finally acknowledged that if he were to perform substandard work and sign a surveyor's name to a document that such substandard work would affect the reputation of the surveyor.
 {¶ 31} Finally, Sokol admitted that in 1998/1999, the Ohio State Board of Engineers and Surveyors confronted him about including surveying information on hundreds of drawings when he was not a licensed surveyor, but he was not punished.
 {¶ 32} Greg Modic testified that he was a professional engineer employed by Bohning Associates. He explained that he previously worked for Sokol before he obtained his engineer's license. Modic worked with Zeck both on Sokol projects and others and testified that Zeck was "professional and diligent," Modic stated that he had heard talk in the surveying and engineering community about the dispute between Sokol and Zeck, but tried to stay out of it. Modic admitted that he did not work for Sokol when Sokol and Zeck entered into their oral contract and was not aware of its terms.
 {¶ 33} Modic's testimony about Sokol's conduct and Zeck's reaction to finding out about Sokol's conduct supported Zeck's testimony. In fact, Modic *Page 13 
testified that Zeck was "furious and mad." Modic explained that he was present when Zeck confronted Sokol and that Sokol did not say anything to contradict Zeck's accusations and simply apologized repeatedly. Modic finally testified that after Zeck left the meeting, Sokol commented that he "knew this day was coming."
 {¶ 34} John Greenhilge is the executive director of the Ohio Board of Engineers and Surveyors. He testified as to his familiarity with the unauthorized use of Zeck's signature and stamp and stated that had never seen "this amount of alleged forgeries." Greenhilge indicated that there was a current investigation of Sokol's conduct but indicated that Sokol had not yet had his license suspended or any other formal discipline because such is not permitted until an investigation is complete and a hearing held.
 {¶ 35} Based on our review of the record, it is undisputed that there was a contract in place that was breached by Sokol and that Zeck performed all of his obligations under that contract. Sokol admitted at trial (via his trial deposition) that he had not paid Zeck for the work he had done and that he had no problem with Zeck's work. Thus, the jury's verdict in favor of Zeck on his breach of contract claim is supported by competent credible evidence going to all elements of a claim for breach of contract and is not against the manifest weight of the evidence. See Wilson, 2007-Ohio-2202, at ¶ 24. *Page 14 
 {¶ 36} The same holds true for Zeck's unjust enrichment claim for Sokol's use of Zeck's signature and stamp on documents for which Zeck did not do the field work and/or review. The evidence at trial established that Sokol benefited from using Zeck's stamp and signature and that he knew of such benefit. Sokol testified that using the stamp and signature allowed him to avoid having to hire and pay a surveyor. Finally, given the ample evidence that Zeck was not aware of Sokol's conduct; substantial evidence, including Sokol's admission, that the forged drawings would impact Zeck's reputation in the community, as well as the property owner; and the fact that the forgery was so pervasive, a jury could reasonably find that it would be unjust for Sokol to retain the benefit received from his conduct without payment. Accordingly, there was competent credible evidence to support the jury's verdict in favor of Zeck on Zeck's unjust enrichment claim and such verdict is not against the manifest weight of the evidence. See Wilson at ¶ 24.
 {¶ 37} Based on the foregoing and our review of the record, we also hold that Zeck presented sufficient evidence to meet his burden of proof for each of his claims for breach of contract and unjust enrichment and that the trial judge properly denied the motion notwithstanding the verdict.
 {¶ 38} Sokol's first assignment of error is overruled.
 Assignment of Error No. II "The trial court erred as a matter of law in awarding prejudgment interest to [Zeck] on the total compensatory damages award of *Page 15 
$300,000.00, where: (1) O.R.C. § 1343.03(C)(1) only provides for prejudgment interest for tort claims and not for contractual and quasi-contractual claims; (2) [Zeck] failed to plead prejudgment interest in his original complaint; and (3) [Sokol] did not fail to make a good faith effort to settle the case."
 {¶ 39} In the second assignment of error, Sokol asserts that Zeck moved for prejudgment interest pursuant to R.C. 1343.03(C), which does not support an award of prejudgment interest on contract and quasi-contract claims, and that Sokol made a good faith effort to settle the case which precludes prejudgment interest on Zeck's tort claims. Sokol also argues that Zeck waived his right to seek prejudgment interest by failing to pray for prejudgment interest in his complaint.
 {¶ 40} "The determination to award prejudgment interest rests within the trial court's sound discretion." Nationwide Mut. Fire Ins. Co. v.Rose, 9th Dist. No. 05CA008814, 2007-Ohio-1216, at ¶ 14, citingScioto Mem. Hosp. Assn., Inc. v. Price Waterhouse (1996),74 Ohio St.3d 474, 479. "Absent a clear abuse of that discretion, the lower court's decision in the matter should not be reversed." Nationwide at ¶ 14, citing Mobberly v. Hendricks (1994), 98 Ohio App.3d 839, 845. "An abuse of discretion is more than an error of judgment, but instead connotes `perversity of will, passion, prejudice, partiality, or moral delinquency.'" Nationwide at ¶ 14, quoting Pons v. Ohio State Med.Bd. (1993), 66 Ohio St.3d 619, 621. "When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court." Nationwide at ¶ 14, citing Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. *Page 16 
 {¶ 41} We begin with a discussion of whether Zeck waived his right to seek prejudgment interest because he did not pray for same in his complaint. The trial court addressed the issue of whether the award of prejudgment interest to Zeck is viable because he did not pray for it in his complaint noting that,
 "Some courts have found that under common law a request for prejudgment interest pursuant to R.C. 1343.03 must be pleaded in the complaint, see Cugini v. Ciminello's Inc. 2003 Ohio App LEXIS 1941 (Franklin County April 24, 2003). However, this case and the cases that follow Cugini, do not address the statute which requires, in part, that the trial court consider the actions of the defendant during the course of litigation when deciding to award a party prejudgment interest. Clearly no litigant can know, prior to filing the complaint whether the opposing party will fail to engage in good faith during the pendency of the lawsuit." (Emphasis in original.)
 {¶ 42} Neither this Court nor the Supreme Court of Ohio has specifically addressed this issue. While Sokol has cited three cases in support of this proposition, none of these cases specifically address the requirements of a trial court pursuant to R.C. 1343.03. All three cases are from the 10th District Court of Appeals and are not binding on this Court. Moreover, none of these cases are cited by any other district for this same proposition, and we are not persuaded by Sokol's arguments. Since a prejudgment award depends, in part, upon a party's conduct during the litigation, and/or is mandatory in contract cases, as will be discussed below, we hold that it is not a waiver of the right to seek prejudgment interest where a party did not pray for same in his or her complaint. *Page 17 
 {¶ 43} Sokol's next assertion is that prejudgment interest may not be awarded on oral contract and unjust enrichment claims.[1] R.C.1343.03(A) provides in relevant part:
 "(A) [W]hen money becomes due and payable upon * * * all verbal contracts entered into * * * the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.437of the Revised Code[.]"
This Court has expressly held that prejudgment interest is proper where a contract "provide[s] for a payment of money that the breaching party failed to pay." RPM, Inc. v. Oatey Co., 9th Dist. Nos. 3282-M, 3289-M,2005-Ohio-1280, at ¶ 64. In RPM, we also noted that "there must in fact be a debt due under the terms of the contract for the prejudgment interest provision of R.C. 1343.03(A) to apply." Id. at ¶ 67. That the amount is unliquidated and/or not capable of ascertainment prior to judgment, as in the case of a claim for unjust enrichment, does not defeat a claim for prejudgment interest. See, Royal Elec. Constr. Corp.v. Ohio State Univ. (1995), 73 Ohio St.3d 110, at the syllabus.
 {¶ 44} Moreover, although not expressly stated by this Court, numerous appellate districts have found, and we agree, that "once a plaintiff receives *Page 18 
judgment on a contract claim, the trial court has no discretion but to award prejudgment interest under R.C. 1343.03(A)." Zunshine v.Cott, 10th Dist. No. 06AP-868, 2007-Ohio-1475, at ¶ 25, citing FirstBank of Marietta v. L.C Ltd. (Dec. 28, 1999), 10th Dist. No. 99AP-304. See, also, Stoner v. Allstate Ins. Co., 5th Dist. No. 05 CA 16,2006-Ohio-3998, at ¶ 18 (holding that R.C. 1343.03(A) is mandatory requiring a trial court to award prejudgment interest); Water WorksSupplies, Inc. v. Grooms Constr. Co., Inc., 4th Dist. No. 04CA12,2005-Ohio-1292, at ¶ 32 (holding that "[t]he mandatory language of R.C.1343.03(A) means that the trial court must award prejudgment interest when appropriate."); Indiana Ins. Co. v. Farmers Ins. of Columbus, 5th Dist. No. 2002 AP 11 0090, 2003-Ohio-4851, at ¶ 60 (noting that the statutory language of R.C. 1343.03(A) that creditor is entitled to interest is mandatory).
 {¶ 45} The jury found that Sokol had breached the contract and rendered judgment in favor of Zeck for that breach. Sokol admitted that he failed to pay Zeck for services rendered pursuant to the contract, and that there was an amount due and owing under the contract. Thus, the trial court had no discretion but to award damages for that breach pursuant to R.C. 1343.03(A). Accordingly, Sokol's argument that Zeck was not entitled to prejudgment interest because he only moved for same pursuant to R.C. 1343.03(C) is without merit.
 {¶ 46} As to the date such interest began to accrue, "the Ohio Supreme Court [has] construed and applied R.C. 1343.03(A), holding that `the award of *Page 19 
prejudgment interest is compensation to the plaintiff for the period of time between accrual of the claim and judgment, regardless of whether the judgment is based on a claim which was liquidated or unliquidated and even if the sum due was not capable of ascertainment until determined by the court.'" Pride of Andes, Inc. v. Soberay (Jan. 10, 2001), 9th Dist. No. 3062-M, at *5, quoting Royal Elec. Constr.Co., 73 Ohio St.3d 110 at syllabus. "R.C. 1343.03(A) contains no starting date for calculating prejudgment interest [however] [t]he [Supreme Court of Ohio] found that for prejudgment interest calculations, it is within the discretion of the trial court to determine when a judgment became due and payable." Hutchinson v.State Auto Ins. Co. (Jan. 30, 2002), 9th Dist. No. 20636, at *1, citingLandis v. Grange Mut. Ins. Co. (1998), 82 Ohio St.3d 339, 342.
 {¶ 47} In this case, the trial court concluded that prejudgment interest on the contract and unjust enrichment verdicts should be calculated from a date prior to litigation:
 "No evidence has been present to the court to specify the exact date that the contract award became due and payable. Plaintiff asks this court to make the first date of forgery, June 1998 as the contract due date. But this does not answer the question of when the contract was due and payable. However, the money certainly became due and payable before litigation."
Sokol has not pointed this Court to any abuse of discretion with the trial court's determination that interest began to accrue on the date the lawsuit was filed. We hold that the trial court did not abuse its discretion when it determined, absent any evidence to the contrary, and given Sokol's admissions at trial that he owed Zeck *Page 20 
money pursuant to the terms of the oral agreement as late as three months prior to trial that interest began to accrue at least by January 25, 2006.
 {¶ 48} Sokol's second assignment of error is overruled.
 {¶ 49} Each of Sokol's assignments of error is overruled and the judgment of the trial court is affirmed.
Judgment Affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. *Page 21 
Costs taxed to Appellants.
CARR, J. and MOORE, J., CONCUR.
[1] On March 13, 2007, the trial court issued a journal entry in which it determined that prejudgment interest on the contract claim was due from January 25, 2006. A handwritten correction, however, changes the date to January 25, 2007. Because the trial court's ultimate judgment, dated March 20, 2007, reflects the earlier date and is consistent with the trial court's reasoning, we assume for purposes of this opinion that the trial court awarded prejudgment interest on the contract claim as of January 25, 2006. *Page 1